**PRATT & WHITNEY CANADA INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 111–84C.**

United States Claims Court.

Feb. 5, 1988.

---

Ronald R. Snider, Washington, D.C.

Robert Neuner, John D. Murnane, Brumbaugh, Graves, Donohue & Raymond, New York City.

John Fargo, Jeffry H. Nelson, Michael J. Fink, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D.C.

Douglas B. Henderson, Barry W. Graham, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C.

Barry E. Bretschneider, Herbert I. Cantor, William E. Player, Wegner & Bretschneider, Washington, D.C.

William D. Hall, Hall, Myers & Rose, Potomac, Md.

## ORDER

NAPIER, Judge.

This is a patent infringement action in which plaintiff, Pratt and Whitney, Canada, Inc, (PWC), has filed a claim against the United States for infringement of its patent (the principal litigation).

General Electric Company ("GE"), a non-party deponent, has appeared before this Court in a collateral proceeding for the limited purpose of seeking to have certain GE information and things protected under the following Protective Orders issued by this Court in conjunction with and as a part of the above lawsuit:

1. "Stipulated Protective Order" filed September 14, 1984 ("First Protective Order" attached as Appendix "A");

2. "Stipulated Protective Order" filed March 18, 1985 ("Second Protective Order" attached as Appendix "B"); and

3. "Protective Order for Non–Party GE" filed June 5th 1985 ("June 5th Protective Order" attached as Appendix "C").

On May 20, 1987, GE filed a "Motion to Enforce Order for Non–Party GE" (the "Motion") asserting that breaches of the

June 5th Protective Order by PWC had occurred (the "Dispute").

On May 20, 1987, this Court instituted a Proceeding to determine whether there was a breach of the protective orders and, if so, what sanctions, if any, would be imposed (the "Proceeding").

On June 16 and July 21, 1987, this Court filed further Orders relating to the issue of breaches.

The Proceeding involved a three-step process, which was outlined to the parties by the Court, to investigate the allegation by GE that the protective orders had been violated.

The first stage was to determine whether or not an actual breach of the protective orders had occurred. This was accomplished by requiring PWC to report to GE every instance where a person not listed in paragraph 4 of the June 5th Protective Order was given access whether by PWC, its attorneys or others, to GE documents marked in accordance with the June 5th order. Further, GE and PWC were allowed to take sworn testimony regarding the allegations and any defenses thereto, and were required to submit memoranda to the Court regarding their findings.

The second step, if warranted, would have been an evidentiary hearing, the purpose of which would have been to determine the extent and sensitivity of any breaches.

The third step of the proceeding, if necessary, would have been the consideration and imposition of sanctions if they were warranted.

However, on September 11, 1987, this Court held a hearing at the request of United Technologies Corporation ("UTC"), acting for and with its subsidiary, PWC, at which counsel for PWC and for GE advised the Court that PWC and GE had reached an agreement in principle in settlement of the Dispute. The settlement in principle included the withdrawal from the case of Barry E. Bretschneider, Ronald R. Snider, and the firm of Wegner & Bretschneider as counsel for PWC in the principal litigation. (Hereinafter "WEGNER & BRETSCH-NEIDER" shall mean Barry E. Bretschneider, Ronald R. Snider, and the firm of WEGNER & BRETSCHNEIDER.)

The Court questioned counsel for the respective parties and GE extensively during the September 11, 1987, hearing, and determined that the aforementioned agreement in principle reached by PWC and GE, with the consent of the Government, would be in the best interests of all the parties and would expedite the final resolution of the pending case.

Subsequent to the September 11, 1987, hearing:

1. On the unopposed Motion of PWC, the Court issued an Order on September 18, 1987, suspending all proceedings in the principal litigation until October 23, 1987, to permit PWC to substitute new counsel for WEGNER & BRETSCHNEIDER.

2. On October 20, 1987, Robert Neuner, Arthur S. Tenser, John D. Murnane and the firm of Brumbaugh, Graves, Donohue & Raymond (hereinafter collectively "BRUMBAUGH") appeared as new counsel for PWC.

3. On October 27, 1987, BRUMBAUGH submitted for filing affidavits agreeing to be bound by the terms of the three protective orders.

4. On December 11, 1987, counsel for Pratt and Whitney Canada Inc., General Electric, the United States and WEGNER & BRETSCHNEIDER, after numerous extensions allowed by the Court, filed a proposed Order reflecting the terms of the settlement reached by the parties with regard to the protective order Proceeding.

The proposed Order did not address the issue of public accessibility to, or any restrictions on, the dissemination of various pleadings, papers and transcripts filed with the Court during the course of the Proceeding except with regard to documents containing GE proprietary information.

At the December 11, 1987, hearing regarding the proposed settlement Order, Ronald Snider, former counsel for PWC, proposed that all pleadings, documents, transcripts and other records concerning the protective order Proceeding be held *in*

*camera* except for those which are proprietary to GE and subject to either the First, Second, or June 5th Protective Orders, which would be held *in camera* separately. He advised that he could not consent to the settlement unless the Proceedings were held *in camera*.

Counsel for GE, PWC and WEGNER & BRETSCHNEIDER supported the recommendation to place the record *in camera*. However, counsel for the Government objected sedulously to any sealing of the record.

No final disposition was reached because of the disagreement with regard to sealing the record. The parties requested that the Court resolve the matter and sought leave to file briefs on the issue.

Former counsel for PWC, Mr. Snider, with supporting argument from PWC and GE and the firm of WEGNER & BRETSCHNEIDER, argues that the Proceeding, an investigation of alleged protective order violations, should be sealed. Mr. Snider argues that the proceeding became one where attorney discipline was demanded as a sanction, and therefore the record of the proceeding should remain *in camera*. He further argues that an open record containing GE's allegations of protective order violations, available for public inspection, constitutes an invasion of the attorney's privacy, and, in itself, constitutes a sanction.

While it is true that allegations were made against counsel for PWC regarding the handling of the protective order material, and that on numerous occasions the Court cautioned that the hearings, sworn testimony, and ultimately the evidentiary hearing bordered on the nature of an inquiry into attorney misconduct, the Proceeding was not, in fact, a disciplinary proceeding and was not conducted in accordance with RUSCC Appendix F.

Throughout the pendency of the Proceeding, the Court has remained sensitive to the effect which the GE allegations could have on the parties and/or their counsel if the allegations were proven. However, it must be emphasized that no final adjudication was ever rendered, except for the finding of a technical violation, and no evidentiary hearing was ever held. Further, this Court has made it clear in the hearing records that no decisions were ever reached regarding the gravity of any misconduct, if any, or the imposition of sanctions.

The settlement in principle reached by the parties obviated the need for a Court ruling, and, by its definition, settlement means the parties worked out their differences, including the differences involving alleged violations of the protective orders. The only question on which disagreement still exists is the question of sealing the record.

GE's allegations were not left unanswered. PWC and its counsel vigorously opposed the allegations made by GE and were themselves allowed to take sworn testimony and file extensive memoranda in rebuttal. These memoranda alleged that GE mismarked or falsely marked documents as confidential and proprietary and claimed rights in documents which did not exist. These assertions also were never resolved by the Court, but presumably were resolved as a part of the settlement in principle, as were the other allegations.

The majority of the documents created for and during the Proceeding were filed on the public record with only a small portion required to be filed *in camera*.

■ To the extent that this Proceeding has been conducted on the public record, it may, by law and necessity, be freely discussed by the parties, GE and the public. A review of the controlling case law reaffirms this conclusion. The dissemination of the orders, hearing transcripts and memoranda of the parties and GE, already on the public record or distributed to the parties without restriction cannot be restrained *nunc pro tunc*. *See Nebraska Press Association v. Stuart*, 427 U.S. 539, 568, 96 S.Ct. 2791, 2807, 49 L.Ed.2d 683 (1976).

It would be impossible to enforce a provision prohibiting or revoking such dissemination of public information. In view of the orders, transcripts and pleadings that have been on the public record for months and the number of people who already have

knowledge of this Proceeding, the source of any future dissemination of information about this Proceeding could be any individual having prior or current knowledge of the Proceeding but not subject to the proposed sealing order.

To enforce an order prohibiting the participants from discussing this Proceeding would run counter to the fundamental ideas of free speech and open government and would entail a lengthy, awkward, and expensive procedure in the event any information may be released, whether intentionally or unintentionally.

The Court is sensitive to the position taken by Mr. Snider, who was, at the time of the alleged protective order violation, primarily responsible for plaintiff's case.

He argues that the settlement by PWC where PWC's law firm, WEGNER & BRETSCHNEIDER, resigned as counsel in the litigation against the United States (and in which settlement negotiations he took no part), undercut his ability to prove the correctness and propriety of his actions in handling protective order material at a full evidentiary hearing on the matter. He asserts that he was not a party to the settlement agreement negotiated by the partners of WEGNER & BRETSCHNEIDER on behalf of PWC. He advised the Court that he was in an "of counsel" relationship with the firm and became aware of the settlement only a short time before the Court hearing.

Mr. Snider argues that at an evidentiary hearing he would have been able to present evidence which would have fully exonerated him, and additionally would have possibly resulted in a finding against GE. Nevertheless, at the time the proposed settlement in principle was presented to the Court, all parties and all counsel, under direct questioning from the Court, agreed that a settlement of the alleged protective order violation and the resignation of counsel of record for PWC was in the best interest of the client and the litigation process.

At the hearing on December 11, and in papers filed with the Court thereafter, Mr. Snider has argued that he would not have felt his interest and reputation as an attorney were being protected if he had not been under the impression that the matter of the alleged protective order violation would be closed. He argues that the existence of unproven allegations could harm his professional reputation.

The Court believes strongly that there should be an opportunity for any allegations to be answered. The allegations, however, were initially made on the public record, and they cannot be thereafter removed from the public record. *Nebraska Press Association*, 427 U.S. at 568, 96 S.Ct. at 2807.

In the interest of justice and fair play, and especially in fairness to Mr. Snider, the record should remain open and those portions of the record which are now closed should be opened, in order to show that the Court never reached a final adjudication, except for the fact that there were admitted technical violations, or, in Mr. Snider's characterization "mistakes". In this regard, no inference can or should be drawn as to what alleged violations could have been substantiated, or, if proved, what mitigating circumstances may have come into play, or what sanctions, if any, might have been imposed.

Throughout the Proceeding, all counsel, while tenacious and strongly adversarial, were in the opinion of this Court, forthcoming, honest, and cooperative.

As is often the unfortunate case in the practice of law, counsel found themselves, in this Proceeding, controlled by a tangled web of pre-existing facts. Without judging the pre-existing circumstances which gave rise to the Proceeding, a final adjudication of which has been rendered unnecessary by the settlement in principle, this Court can, however, and does commend all counsel for their candor, vigorous defense of their positions, and cooperation with the Court during the pendency of the Proceeding.

There is a long-standing common law right of public access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–599, 98 S.Ct. 1306, 1311–1313, 55 L.Ed.2d 570 (1978); *F.T.C. v.*

*Standard Financial Management Corp.,* 830 F.2d 404, 408–410 (1st Cir.1987); *United States v. Mitchell,* 551 F.2d 1252, 1257–1258 (D.C.Cir.1976), *rev'd on other grounds, sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). This common law right enables the public to review court records, and public access to court records is essential to the preservation of our system of self-government. *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1066–1070 (3rd Cir.1984).

"As James Madison warned, '[a] popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy: or perhaps both.'" *Mitchell,* 551 F.2d at 1258. As part of our Government, courts are subject to public scrutiny and "[t]here is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).

■ To monitor the proceedings of the United States Claims Court, access to its judicial records is essential. The proceedings of a court are reported in the records maintained by its clerk. Proceedings in the courtroom are transcribed and made available to the public by the clerk. All pleadings, orders, notices, exhibits and transcripts filed in the Claims Court are made publicly available through the Clerk unless the records are *expressly* filed *in camera.*

The Clerk's public files are often the only means through which the public may inspect the records of the Claims Court. Access to the courtroom is no substitute to access to court records. A visitor to a courtroom can see and hear the proceedings but is generally unable to study the exhibits, read the legal memoranda submitted by the parties or read any written orders or judgments entered by the Court unless he or she visits the Clerk's office. This disadvantage is particularly acute in the Claims Court where many proceedings are conducted through written motions.

Nationwide geographical jurisdiction often precludes attendance by interested persons at hearings and court proceedings. For example, a full understanding of this Proceeding can only be gained by reading the pleadings, memoranda and transcripts. The hearing transcripts, by themselves, do not convey many of the issues considered in this Proceeding. Moreover, while a spectator must be physically present in a courtroom to view a proceeding, judicial records may be inspected in the Clerk's office five days a week from 8:45 a.m. to 5:15 p.m. The public and Congress, which oversees our jurisdiction, can effectively monitor the activities of this Court only by having full access to its records.

■ The right of access applies to materials submitted to the court in civil adjudicatory proceedings. *F.T.C. v. Standard Financial,* 830 F.2d at 408; *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust Litigation,* 101 F.R.D. 34, 42–43 (C.D.Cal.1984). On point with this Proceeding, the right of access has also been held to apply to proceedings regarding protective order violations. *In re Iowa Freedom of Information Council,* 724 F.2d 658, 661 (8th Cir.1983).

As does this Proceeding, the *Iowa Freedom* case involved the issue of alleged unauthorized disclosure by a party of protected trade secrets. *In re Iowa Freedom,* 724 F.2d at 660.

Other civil proceedings which have been held to be subject to the common law right of public access include those involving: temporary restraining orders and preliminary injunctions, *Publicker Industries,* 733 F.2d at 1061; *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1168–1169, 1176–1177 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984), disqualification proceedings of judges and attorneys, *In re National Broadcasting Co. (United States v. Presser),* 828 F.2d 340, 344–345 (6th Cir. 1987), review of administrative decision regarding inventions, *In re Sackett,* 136 F.2d

248, 249 (C.C.P.A.1943), summary judgment motions, *Joy v. North,* 692 F.2d at 893; *In re Coordinated Pretrial Proceedings,* 101 F.R.D. at 42–43, and dispositive motions and court approval of settlements, *F.T.C. v. Standard Financial,* 830 F.2d at 408; *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1309–1310 (7th Cir.1984).

This Proceeding was an adjudicatory proceeding and "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy v. North,* 692 F.2d at 893.

Furthermore, the right of public access necessarily attaches because the Court made preliminary findings in its Order of July 21, 1987, which could have ultimately affected the substantive rights of PWC and its counsel. *F.T.C. v. Standard Financial,* 830 F.2d at 408; *In re Continental Illinois,* 732 F.2d at 1309–1310.

The right of access extends to all of the material filed for the Court's consideration by the parties and GE with the exception of GE proprietary information. *F.T.C. v. Standard Financial,* 830 F.2d at 408; *Joy v. North,* 692 F.2d at 893; *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F.Supp. 866, 897–898 (E.D.Pa. 1981).

In this Proceeding the right of access extends to the orders, hearing transcripts, transcripts in which sworn testimony was taken, pleadings and other documents filed on the record for the Court's consideration.

■ Discovery materials themselves are not subject to the common law right of access to judicial records. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–36, 104 S.Ct. 2199, 2207–2209, 81 L.Ed.2d 17 (1984); *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 10–13 (1st Cir.1986). The only discovery materials involved in this Proceeding are the documents and things produced to PWC and the deposition transcripts of GE engineers covered by protective orders which PWC was alleged to have disclosed improperly.

The pleadings, transcripts and Orders from this Proceeding are not discovery materials. The decisions of the courts in *Seattle Times* and in *Anderson* were made public as were the motions and hearing transcripts. *Seattle Times,* 467 U.S. at 24–29, 104 S.Ct. at 2203–2205; *Anderson,* 805 F.2d at 4. Similarly, in this Proceeding, the Orders, transcripts and pleadings should be kept on the public record.

In *Seattle Times,* the Supreme Court found no right of access to discovery materials, in part, because discovery is generally conducted privately between the parties and, if subject to a protective order, discovery materials are produced pursuant to an order which limits access to the materials. *Seattle Times,* 467 U.S. at 32–33, 104 S.Ct. at 2207–2208. The pleadings, transcripts and Orders of this Proceeding were filed with the Court and were not subject to any restrictions on their use in regard to the Proceeding. Moreover, with respect to discovery materials there is no opportunity to rebut prejudicial information unless such information is submitted for the consideration of the court. *See Seattle Times,* 467 U.S. at 34–36, 104 S.Ct. at 2208–2209. In this Proceeding, the parties, their counsel and GE each had a fair opportunity to answer all allegations in pleadings that were submitted to the Court for consideration. The information which Mr. Snider, supported by GE and PWC, seeks to place *in camera* are the pleadings, transcripts and Orders that were considered and entered by the Court and relate directly to the alleged violations of the protective orders. *See Continental Illinois,* 732 F.2d at 1309–1310.

■ It is within the discretion of the trial court to determine what circumstances overcome the common law right of access to judicial records. *Nixon,* 435 U.S. at 598–599, 98 S.Ct. at 1312–1313; *United States v. Beckham,* 789 F.2d 401, 409–415 (6th Cir.1986); *In re National Broadcasting Co. (Jenrette),* 653 F.2d 609, 613 (D.C. Cir.1981). But that discretion is circumscribed by the presumption that the public shall have access to those records absent a compelling justification for sealing.

A trial court "must set forth substantial reasons for denying" access to its records. *Beckham,* 789 F.2d at 413. Only the most compelling reasons justify denying access to information which was not publicly available during a hearing, or available in another form. *F.T.C. v. Standard Financial,* 830 F.2d at 410; *Beckham,* 789 F.2d at 414; *In re Knoxville News–Sentinel Co.,* 723 F.2d 470, 473–478 (6th Cir.1983).

■ The heavy burden of overcoming the presumption of open judicial records is on the party seeking to maintain the court records *in camera. F.T.C. v. Standard,* 830 F.2d at 413; *Beckham,* 789 F.2d at 420 (Contie, J., dissenting). PWC and its former counsel are required to prove "the existence of special circumstances adequate to overcome the presumption of public accessibility." *F.T.C. v. Standard,* 830 F.2d at 413.

The standard to be applied in determining whether the public's right of access has been overcome was recently stated by the First Circuit as follows:

> To be sure, the public's right to inspect such records is not absolute. It can be blunted if "court files might ... become a vehicle for improper purposes," or where access could interfere with the administration of justice. Yet, the presumption is no mere paper tiger. If not "overpowering," the presumption is nonetheless strong and sturdy. The citizen's right to know is not lightly to be deflected. We agree with the Sixth Circuit that "[o]nly the most compelling reasons can justify non-disclosure of judicial records." (citations omitted.)

*F.T.C. v. Standard Financial,* 830 F.2d at 410. The referenced decision of the Sixth Circuit is the opinion in *In re Knoxville* in which the court stated that the public and the press should be provided an opportunity to oppose sealing before a trial court considers placing its records *in camera. In re Knoxville,* 723 F.2d at 475–476.

A common justification for overcoming the right of access to judicial records is that the records contain trade secrets. *In re Iowa Freedom,* 724 F.2d at 661; *In re National Broadcasting (Jenrette),* 653

F.2d at 613. In this Proceeding, the danger of publicly disclosing GE's trade secrets justifies keeping certain portions of pleadings and hearing transcripts *in camera.* In the *Iowa Freedom* case, a hearing was closed to avoid publicly disclosing trade secrets and then redacted versions of the hearing transcripts, pleadings, and exhibits were prepared and filed on public record. *Iowa Freedom,* 724 F.2d at 659.

■ The same steps should be followed in this Proceeding. The Court is persuaded that GE should be required to redact its trade secrets from all transcripts and pleadings and other documents currently *in camera* and file redacted versions of these transcripts and pleadings on the public record with the Court.

■ Any order keeping portions of judicial proceedings *in camera* must provide for public access to those portions of orders, transcripts and pleadings which do not disclose trade secrets. *In re Iowa Freedom,* 724 F.2d at 661–662. With respect to any material that GE keeps *in camera,* the parties should have the right to move for the public disclosure of those materials on the ground that they contain no trade secrets.

In very limited circumstances, privacy interests can outweigh the public's right of access to judicial records. *In re Knoxville,* 723 F.2d at 474–478; *In re National Broadcasting (Jenrette),* 653 F.2d at 619– 620; *In re Application of KSTP Television,* 504 F.Supp. 360 (D.Minn.1980). "Possible injury to innocent third persons is certainly a factor that may properly be taken into account." *In re National Broadcasting (Jenrette),* 653 F.2d at 619.

In *KSTP Television,* it was found that the public release of copies of video tapes of the repeated rape of a church missionary would not significantly increase the public's knowledge of the criminal trial of the rapist and would "impinge on the precious privacy rights of ... the unfortunate victim." *KSTP Television,* 504 F.Supp. at 362. Courts have protected privacy rights legislated by Congress such as with respect to bank records. *In re Knoxville,* 723 F.2d

at 476–478. In a suit between a bank and the Federal Deposit Insurance Corporation (FDIC), the Sixth Circuit refused to publicly disclose the bank records of depositors "who were not responsible for the initiation of the underlying litigation." *In re Knoxville*, 723 F.2d at 477. Similarly, a bank official may move *in camera* to obtain a preliminary injunction to stop a FDIC confidential administrative hearing against him. *Anonymous v. F.D.I.C.*, 617 F.Supp. 509, 512–513 (D.D.C.1985).

■ Even where privacy interests override the common law right of public access, only those documents which contain confidential information are sealed. In *KSTP Television*, the name of the rape victim and transcripts of video showing the rape were made public and only the videotapes themselves were sealed. In *Knoxville News*, only two exhibits relating to the identities of non-party bank customers were kept *in camera*. *Id.* 723 F.2d at 476. The Supreme Court of Minnesota sealed settlement documents and the transcripts of a hearing regarding the distribution of settlement funds but did not seal other records in a wrongful death suit. *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 201–02 n. 3 (1986).

In *National Broadcasting Co. (Jenrette)*, only those portions of ABSCAM video tapes referring to innocent third parties were sealed. *Id.* 653 F.2d at 620. Sealing of entire proceedings, including orders, hearing transcripts and pleadings is rarely, if ever, justified.

■ In the instant case, the common law right of access is not overcome on the basis of privacy or potential harm to PWC's or its counsel's professional reputations. PWC and its counsel are not victims of a crime, innocent third parties or protected by a specific statutory privacy right. *See Knoxville News*, 723 F.2d at 476–477; *KSTP Television*, 504 F.Supp. at 362. There are no unanswered allegations against PWC or its counsel. PWC and its counsel vigorously opposed the allegations made by GE and were allowed to take sworn testimony and file extensive memoranda with the Court. The Court con-

sidered the material submitted by the parties and GE before a threshold finding of a technical protective order violation justifying the need for an evidentiary hearing. *See* Order of July 21, 1987. The common law right of access is particularly strong with respect to materials considered by a court. *See United States v. Hubbard*, 650 F.2d 293 at 314–315, 317–318 (D.C.Cir. 1980).

Mr. Snider argues that his reputation will suffer to the extent that clients may question his handling of confidential material, which will adversely affect his law practice if all records of this Proceeding are not sealed because of the allegations which he had no opportunity to rebut in an evidentiary hearing. This assertion is unjustified. The Court has not found any willful violation.

The practice of law involves the adversarial process where allegations of misconduct are often made against lawyers. Unfortunately, that is a hazard of the profession, which like public service, "comes with the territory."

Mr. Snider has produced no evidence that any prospective client has declined to retain him because of this Proceeding. Neither Mr. Bretschneider, the firm of WEGNER & BRETSCHNEIDER nor Mr. Snider have cited adverse consequences in any other suit as a result of clients learning of this Proceeding.

Most clients should recognize, at least in the opinion of this Court, that lawyers must frequently practice in a highly-charged, emotional atmosphere with great amounts of money, and many times, life itself, at stake. As such, in the setting of a lawsuit, allegations must be weighed as they are—only allegations unless and until they are proven. In short, any claim of harm is highly speculative.

Moreover, it appears that others already know of this Proceeding since it has been on the public record in large part for more than eight (8) months. (Transcript of hearing of December 15, 1987, at 40.) A closure at this point, if allowable under the applicable case law, which it is not, would

give rise to the wrong inference that a finding of misconduct meriting sanctions had been adjudicated.

This Court recognizes Mr. Snider's desire to forestall any possibility that negative inferences could be drawn from the settlement which may blemish his record. Indeed, these proceedings should not be construed to tarnish his record, or that of any other attorney who participated in the Proceeding. A full disclosure of all aspects of the Proceeding serves the paramount interest of the public, and, indeed, in the opinion of this Court, it serves Mr. Snider's interest also. While PWC filed memoranda supporting closure, it nevertheless invoked the jurisdiction of this Court in the principal litigation without any assurance of closure. The same argument applied to GE, which initially sought the assistance of the Court in enforcing the protective order. GE filed its motion on the public record. The majority of the Proceeding was conducted openly and on the public record from the outset, with protective order material either redacted from certain documents or kept *in camera.* Neither PWC nor its counsel moved to seal the proceeding or the documents related to the alleged breach until extremely late in the course of the Proceeding. Such a motion is too late, too speculative, and contrary to controlling case law.

Accordingly, the Court adopts the settlement in principle as agreed to by the parties and presented to the Court, and IT IS NOW ORDERED that:

1(a) All pleadings and transcripts created for the Proceeding, and any other documents relating to this Proceeding, which include GE information subject to the First, Second or June 5th Protective Orders and which have been filed with the Court *in camera* shall be kept *in camera* by the Court. All pleadings, orders, and transcripts that were initially filed on the public record and the disclosure of which was later restricted by the Order of December 16, 1987, shall be returned to the public record. Paragraph 5 of the Order of December 18, 1987, is hereby vacated. Transcripts (including exhibits identified in those transcripts) and pleadings deposited in the Court's vault during the Proceeding shall remain in the vault except that the new counsel of record for PWC, counsel of record for the Government, and counsel of record for GE may each obtain one (1) copy of each of these transcripts and pleadings after the provisions of paragraphs numbered 6, 7 and 8 of this Order have been satisfied. Any such copy shall be treated by the counsel of record obtaining it as being covered by the appropriate First, Second or June 5th Protective Orders.

(b) Furthermore, within forty-five (45) days of the entry of this Order, GE shall create redacted versions of all transcripts and pleadings currently in the vault by excising GE information subject to the First, Second or June 5th Protective Orders and file those redacted versions with the Court on the public record.

(c) Either party, or GE, may move for the Court to redact portions of pleadings, and transcripts from the Proceeding that remain *in camera* and permit them to be used without restriction. It shall be the burden of the moving party to prove that the portions to be redacted are not covered by either the First, Second or June 5th Protective Orders and, thus, should not be kept *in camera.*

2. PWC shall certify to GE and to this Court that all GE written documents including employee agreements, trade secret manuals and instructions, and employee lists, and any copies thereof, made available to PWC during the course of the Proceeding have been returned to GE via its counsel, and PWC shall not disclose to others or use such documents for any purpose except as otherwise may be provided for in this Order.

3. PWC, its employees who have had access to confidential GE information, William D. Hall, and WEGNER & BRETSCHNEIDER shall each certify to GE and the Court that they will hold in strict confidence and not use for any purpose information protected by the June 5th Protective Order and that they have no material covered by any of the Protective Orders.

4. The following matters that were before the Court on September 11, 1987, re-

lating to the Proceeding are dismissed as moot:

(a) Plaintiff's motion for leave to designate additional fact witnesses for deposition, filed July 1, 1987;

(b) Plaintiff's motion to strike, or in the alternative, motion in limine to bar GE from relying on Lester H. King's affidavit as affirmative evidence on its behalf, filed July 15, 1987;

(c) Plaintiff's motion for order giving David Japikse access to General Electric information under all protective orders, filed August 18, 1987;

(d) The Government's motion for an order regarding the evidentiary hearing, filed September 8, 1987; and

(e) Request for leave of Court to obtain subpoenas for evidentiary hearing, filed by plaintiff on September 10, 1987.

5. PWC and BRUMBAUGH shall not consult with WEGNER & BRETSCHNEIDER (including Ronald R. Snider or William D. Hall) in connection with this litigation except to the extent necessary for a proper understanding of the facts and issues in this litigation. PWC and BRUMBAUGH shall not use WEGNER & BRETSCHNEIDER, or any attorney thereof, or William D. Hall, for any purpose in this litigation other than to ask necessary questions thereof to clarify prior activities in this litigation.

6. By March 4, 1988, GE will identify portions of transcripts of depositions of GE employees, except the transcripts of the 1987 Lester King deposition, covered by any of the Protective Orders. Upon entry of this Order, GE will be permitted to remove from the vault the 1987 Lester King deposition transcripts, and will identify and mark portions thereof subject to any of the Protective Orders, and forward copies so marked to BRUMBAUGH and the Government within thirty (30) days of receipt thereof.

7. Concerning documents and things deposited in the Court's vault by PWC in the Proceeding, during transfer of the prosecution of the litigation from WEGNER & BRETSCHNEIDER to BRUMBAUGH, WEGNER & BRETSCHNEIDER or Snider shall:

(a) prepare two lists of (i) all documents and things which have been marked or identified as covered by each of the First and Second (first list) and June 5th Protective Orders (second list) and (ii) all materials containing any information derived from such documents and things;

(b) insure that all materials designated or otherwise identified to be covered by any of the First, Second, and June 5th Protective Orders, copies of those materials or portions thereof and all materials derived from protected GE information are clearly designated by marking or other identification as being covered by the appropriate Protective Order; such June 5th Protective Order materials include, for example:

(i) GE Report designated PX–20 in the litigation and entitled "Axial–Centrifugal Compressor Program: Phases III, IV and V Final Report for the 5 Lb/Sec Axial–Centrifugal Compressor Program" dated August 25, 1975;

(ii) GE Report designated PX–33 in the litigation and entitled "T700–GE–700 Engine Design Report: Special Data (Volume 1B of 8)" dated April 28, 1978;

(iii) GE Technical Memorandum No. 78AEG 1249 entitled "T700 Diffuser Development Using Static Blow Tests" dated August 9, 1978 (this Technical Memorandum, complete with the drawings listed on page 43 of the Memorandum, has been designated DX–853 in the litigation, and a version of the Memorandum without the drawings listed on page 43 has been designated PX–39 in the litigation);

(iv) GE Technical Memorandum No. TM 70AEG 1478 designated DX–852 in the litigation and entitled "Aerodynamic Performance of the GE 2.2 Lb/Sec Centrifugal Stage Component Tests: B/U# 1 to B/U# 12" dated March 17, 1970;

(v) GE drawing number 17A105–143 designated DX–854C in the litigation

and entitled "Discreet Passage Diffuser";

(vi) GE metal castings designated DX–856A & B in the litigation and related to a diffuser;

(vii) GE compressor efficiency charts designated in the litigation DX–872A & B, dated February 20, 1987, and concerning efficiencies of two diffusers;"

(viii) GE confidential information contained in Defendant's Proposed Findings of Fact, Memorandum of Contentions of Facts and Law, Defendant's Witnesses listing, and Defendant's Exhibit List served and filed on March 5, 1987 in the litigation; and

(ix) deposition transcripts identified or marked by GE in accordance with paragraph 6 herein.

(c) create a written record of the number of copies of each protected document and thing and insure that a serialized number appears on each original and each copy as required by paragraph 4 of the First Protective Order, paragraph 3 of the Second Protective Order, and paragraph 4 of the June 5th Protective Order;

(d) provide a written report of compliance, including copies of the lists and record of the subparagraphs (a) and (c) of this paragraph, to GE within two (2) weeks of the entry date of this present Order; and

(e) shall, within one (1) week of the submission of the lists, certify in writing to the Court and to GE that all documents and things designated by marking or otherwise identified to be covered by any of the First, Second, or June 5th Protective Orders and any information derived from such documents and things held by WEGNER & BRETSCHNEIDER have been deposited in the Court's vault.

8. Concerning documents and things deposited in the Court's vault by the defendant ("Government") during the Proceeding, counsel for the Government shall perform the same steps set forth in subparagraphs (a)—(c) of the paragraph numbered 7 of this present Order and provide a written report of compliance, including the lists and record of subparagraphs (a) and (c), to GE within two (2) weeks of the entry date of this present Order.

9. In instances where documents or physical objects are generated on behalf of PWC for use in the litigation and when such documents or objects incorporate material marked or identified as covered by the First, Second or June 5th Protective Orders, BRUMBAUGH shall, at the time of generation, clearly mark such documents, objects or copies thereof with a legend in accordance with the applicable GE Protective Order.

10. Counsel for the Government shall perform the same steps specified in the paragraph numbered 9 of this present Order for documents and things and copies thereof generated for use by the Government in the litigation.

11. The Government shall, as soon as practicable after complying with paragraph 8, remove from the Court's vault all documents and things it placed there during the pendency of the Dispute.

12. BRUMBAUGH shall, as soon as practicable after WEGNER & BRETSCHNEIDER and/or Snider have complied with paragraph 7, removed from the Court's vault all documents and things PWC placed there during the pendency of the Dispute. WEGNER & BRETSCHNEIDER may further assist BRUMBAUGH in identifying GE documents and things in the vault and removing such documents and things from the vault.

13. Any present or former employee or former counsel of PWC or former counsel of WEGNER & BRETSCHNEIDER who has knowledge of information contained in or derived from documents or things marked or identified as covered by the June 5th Protective Order shall not use such knowledge for any purpose, including, but not limited to (a) preparing to testify at trial or at deposition or to support testimony at trial or at deposition, or in the preparation of others for trial or deposition testimony, (b) revealing or referring to such information while testifying at trial or at deposition, or (c) testifying on matters related to such information, provided how-

ever, the foregoing shall not preclude any use whatsoever of written or recorded information acquired, without restriction, other than through documents and things covered by such Protective Order and (d) David P. Kenny may not testify with respect to:

(a) The performance of the MOD-2 diffuser as disclosed in DX-872A & B;

(b) The conduct, data and results of the blow tests reported in DX-853 (GE TM 78AEG 1249); and

(c) The conduct, data and results of the diffuser tests reported in DX-852 (GE TM 70AEG 1478) so long as the foregoing exhibits are covered by the June 5th Protective Order.

14. PWC, its employees, counsel and former counsel for PWC, WEGNER & BRETSCHNEIDER, and/or the Government shall comply strictly with the terms of the First, Second, and June 5th Protective Orders.

15. WEGNER & BRETSCHNEIDER:

(a) shall hold in strict confidence all information contained in, derived from, or concerning GE documents and things designated by marking or identified as covered by any of the First, Second, or June 5th Protective Orders and information referenced in paragraph 2 herein and shall not use or disclose any such information for any purpose except as provided in the paragraph numbered 5 of this present Order; and

(b) shall cease completely any involvement in the litigation except as provided in the paragraphs numbered 5, 7 and 12 of this present Order.

16. All documents and things received from GE or the Government by PWC which were produced under the provisions of any one of the First, Second, or June 5th Protective Orders, and any information derived therefrom, shall continue to be covered by the respective Protective Order until such time as they are removed from such coverage by this Court or by GE through notification to the Court.

17. All documents and things received from GE or the Government by PWC which contain an incomplete or illegible legend under the provisions of any one of the First, Second, or June 5th Protective Orders shall be promptly brought to the attention of GE, the Government, and the Court for any required correction thereof.

18. The suspension of proceeding in the principal litigation between PWC and the United States is hereby lifted and the parties are ordered to resume their pretrial preparation in accordance with the terms of this order.

19. The United States shall complete the deposition of David P. Kenny within 30 days of the filing of this Order.

20. The parties in the principal litigation shall file a joint status report on or before Friday, March 18, 1988, setting forth the progress of pretrial preparation and setting forth a proposed trial schedule.

IT IS SO ORDERED.

## APPENDIX A

### STIPULATED PROTECTIVE ORDER

Filed Sept. 14, 1984

IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiff Pratt & Whitney Canada Inc., Defendant the United States and non-party General Electric Co., subject to the further order of the Court that:

1. Plaintiff seeks from Defendant pursuant to RUSCC 33 and 34 certain information and documents which non-party General Electric Co. (GE), a government contractor, prepared and provided to Defendant under government contract, and which are now marked and were marked at the time they were delivered to the government with legends indicating that they were proprietary, "sensitive" and/or business confidential to GE.

2. GE has agreed that Defendant may provide such information and documents to Plaintiff subject to the limitations herein provided.

3. Information and documents marked proprietary, "sensitive" and/or business confidential by GE under the conditions set forth in paragraph 1 hereof shall be

deemed "confidential information" under this Order and shall be *so* treated until such time as such information or documents may be determined by the Court to be otherwise. The Defendant shall exert its best efforts to ensure that all such information or documents are marked "GE Confidential—Subject to Protective Order" prior to production to Plaintiff.

4. Such designated confidential information and documents shall be provided only to counsel for Plaintiff in the subject action, employees of the firm of counsel for Plaintiff, Christopher J.C. Pascoe, Gerard J. Gagnon and David P. Kenny of Plaintiff and any outside expert or experts that Plaintiff may designate in writing. Plaintiff shall keep contemporaneous written records of the number of copies made of all documents received and shall mark each copy with an identifying number in serial order. Confidential information and documents hereunder shall not be taken into or used in any plant or office of Plaintiff. In the event that Plaintiff's counsel believes that disclosure of confidential information should be made to any other person in connection with this action, Plaintiff's counsel shall make a written request to Defendant's counsel and GE's counsel identified below for modification of the provisions of this Order to add such other person. Counsel shall attempt to resolve any dispute on an informal basis. In the event that such dispute cannot be resolved on an informal basis, Plaintiff's counsel shall have the right, on notice to Defendant's counsel and GE's counsel, to request the Court to determine *in camera* the propriety of the requested disclosure.

Attorney for Plaintiff
Pratt & Whitney Canada Inc.
August 27, 1984

_____
Date

5. Plaintiff and Defendant shall not be deemed to have agreed that any designated information and/or documents are, in fact, proprietary and/or confidential by entering into this stipulation. Plaintiff and Defendant shall not be deemed to have waived any objection that they would otherwise have to any discovery request or proceeding or to the admissibility of any evidence in this action by reason of entering into this stipulation.

6. All designated confidential information and documents shall be used only for the purposes of and in connection with this action and not for any other purpose whatsoever.

7. Notwithstanding any of the foregoing, information and material need not be treated as confidential if it was previously known to any of the parties, or if it becomes known to either Plaintiff's and Defendant's counsel from a source having a bona fide right to make an unrestricted disclosure of such information or material or if it becomes a matter of public record through no fault of either Plaintiff's or Defendant's counsel, as shown by evidence in writing.

8. Upon final termination of this litigation, each party or other person subject to the terms of this Order shall be under an obligation to assemble and return to the originating source or destroy all materials and documents designated confidential and all copies thereof.

9. Nothing in the stipulation will prejudice any party herein from seeking from the Court amendments to this stipulation.

Respectfully submitted,

/ s / Barry E. Bretschneider

_____
BARRY E. BRETSCHNEIDER
Wegner & Bretschneider
Fourth Floor
2030 M Street, N.W.
Washington, D.C. 20036
(202) 887-0400

Attorneys for Defendant
The United States

RICHARD K. WILLARD
Acting Assistant Attorney General

VITO J. DiPIETRO
Director

September 14, 1984
_____
Date

/ s / Thomas J. Scott, Jr.
_____
THOMAS J. SCOTT, JR.
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
(202) 724-7416

Attorney for non-party
  General Electric Company
30 Aug 84
_____
Date

/ s / Frank L. Conte
_____
FRANK L. CONTE
Legal Operation
Aircraft Engine Business Group
General Electric Company
1000 Western Avenue
Lynn, Massachusetts 01901
(617) 594-2701

IT IS SO ORDERED

_____
H. ROBERT MAYER
Judge, United States Claims Court

_____
Date

## APPENDIX B

### STIPULATED PROTECTIVE ORDER

Filed March 18, 1985

IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiff Pratt & Whitney Canada Inc., Defendant the United States and non-party General Electric Company, subject to the further order of the Court that:

1. Plaintiff seeks from non-party General Electric Company (GE) pursuant to RUSCC 45 certain information and documents which may be considered proprietary, "sensitive" and/or business confidential to GE. Plaintiff, Defendant and GE agree that GE shall provide such information and documents pursuant to subpoena served upon it by Plaintiff subject to the limitations provided in this Order.

2. Information and documents marked or designated proprietary, "sensitive" and/or business confidential by GE in compling with the subpoena served upon it, shall be deemed "confidential information" under this Order and shall be so treated until such time as such information or documents may be determined by the Court to be otherwise.

3. Production to Plaintiff of such designated confidential information and documents shall be made only to counsel for Plaintiff in the subject action, employees of the firm of counsel for Plaintiff, Christopher J.C. Pascoe, Gerard J. Gagnon and David P. Kenny of Plaintiff and any outside expert or experts that Plaintiff may

designate in writing. Plaintiff shall keep contemporaneous written records of the number of copies made of all documents received and shall mark each copy with an identifying number in serial order. Confidential information and documents hereunder shall not be taken into or used in any plant or office of Plaintiff. In the event that Plaintiff's counsel believes that disclosure of confidential information should be made to any other person in connection with this action, Plaintiff's counsel shall make a written request to Defendant's counsel and GE's counsel identified below for modification of the provisions of this Order to add such other person. Counsel shall attempt to resolve any dispute on an informal basis. In the event that such dispute cannot be resolved on an informal basis, Plaintiff's counsel shall have the right, on notice to Defendant's counsel and GE's counsel, to request the Court to determine *in camera* the propriety of the requested disclosure.

4. Plaintiff and Defendant shall not be deemed to have agreed that any designated information and/or documents are, in fact, proprietary and/or confidential by entering into this stipulation. Plaintiff and Defendant shall not be deemed to have waived any objection that they would otherwise have to any discovery request or proceeding or to the admissibility of any evidence in this action by reason of entering into this stipulation.

5. All designated confidential information and documents shall be used only for the purposes of and in connection with this action and not for any other purpose whatsoever.

6. Notwithstanding any of the foregoing, information and material need not be treated as confidential if it was previously known to any of the parties, or if it becomes known to either Plaintiff's and Defendant's counsel from a source having a bona fide right to make an unrestricted disclosure of such information or material or if it becomes a matter of public record through no fault of either Plaintiff's or Defendant's counsel, as shown by evidence in writing.

7. Upon final termination of this litigation, each party or other person subject to the terms of this Order shall be under an obligation to assemble and return to the originating source or destroy all materials and documents designated confidential and all copies thereof.

8. Nothing in the stipulation will prejudice any party herein from seeking from the Court amendments to this stipulation.

Attorney for Plaintiff
  Pratt & Whitney Canada Inc.
February 22, 1985
_____
          Date

Attorneys for Defendant
  The United States

March 11, 1985
_____
          Date

Respectfully submitted,

/ s / Barry E. Bretschneider
_____
BARRY E. BRETSCHNEIDER
Wegner & Bretschneider
Fourth Floor
2030 M Street, N.W.
Washington, D.C. 20036
(202) 887-0400

RICHARD K. WILLARD
Acting Assistant Attorney General

VITO J. DiPIETRO
Director

/ s / Thomas J. Scott, Jr.
_____
THOMAS J. SCOTT, JR.
Commercial Litigation Branch

Civil Division
Department of Justice
Washington, D.C. 20530
(202) 724–7416

Attorney for non-party
  General Electric Company
26 Feb 85
_____

Date

/ s / Francis L. Conte
_____

FRANCIS L. CONTE
Legal Operation
Aircraft Engine Business Group
General Electric Company
1000 Western Avenue
Lynn, Massachusetts 01901
(617) 594–2701

IT IS SO ORDERED
H. Robert Mayer
_____

H. ROBERT MAYER
Judge, United States Claims Court
18 March 85
_____

Date

## APPENDIX C

### PROTECTIVE ORDER FOR NON–PARTY GE

Filed June 5, 1985

Upon Motion of The General Electric Company (hereinafter "GE"), it is hereby ordered that the following provisions govern discovery of GE documents and things (whether delivered from GE or from the United States, hereinafter "the Government"), and testimony taken of GE employees, subsequent to the date of this Order.

1. As hereinafter used, the term "confidential information" means proprietary technical, business, or financial information and includes trade secrets, know-how, proprietary or "sensitive" information, or the like which relates to a product or process, whether military or commercial, or which relates to or contains research information generated by or for GE whether revealed during a deposition, in a document, in an interrogatory answer, or otherwise.

2. Prior to the disclosure to Pratt & Whitney Canada, Inc. (hereinafter "P & W") of any document or thing deemed to contain or embody confidential information, GE or the Government shall mark the document or thing, or otherwise identify it if marking is impracticable, with a legend in substantially the form "GENERAL ELECTRIC COMPANY CONFIDENTIAL INFORMATION—SUBJECT TO PROTECTIVE ORDER" (hereinafter "GE Confidential Information").

3. All portions of transcripts, depositions, exhibits, answers to interrogatories and other documents filed with the Court pursuant to the pre-trial discovery taken of GE or the Government which are designated as comprising or containing GE Confidential Information, or any pleading or memorandum purporting to reproduce or paraphrase such information shall be separately filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the caption of this litigation, as indication of the nature of the contents of such sealed envelope or other container, the words "GENERAL ELECTRIC COMPANY CONFIDENTIAL INFORMATION—SUBJECT TO PROTECTIVE ORDER" and a statement substantially in the following form:

"This envelope containing documents which are filed in this case by (name of

party) is not to be opened nor the contents thereof to be displayed or revealed except by order of the Court or consent of the parties and GE."

4. All discovery materials and information received by counsel for any party pursuant to pre-trial discovery procedures in this litigation and which are designated as containing or comprising GE Confidential Information shall be retained by counsel for the party taking the discovery at the offices of his firm or at the offices of Government counsel. Each party shall keep written records of the number of copies made of all such materials and information and shall mark each copy with an identifying number in serial order. Such materials and information shall not be used by said counsel except solely for the purposes of this litigation, and shall not be disclosed by said counsel, unless otherwise agreed among the parties and GE or ordered by the Court, except that and solely for the purposes of this litigation any such materials and information, including but not limited to transcript, deposition, exhibit, answer, or other document or information may be disclosed by said counsel to, and may be used by,

(a) for the party P & W, associate outside counsel of record, employees of the law firm of said outside counsel, and no more than three (3) independent experts who do not work for P & W, United Technologies Corporation, its subsidiaries and affiliates; or for another competitor of GE in this area; and

(b) for the Government, associate counsel of record, employees of the Department of Justice assisting counsel of record, and no more than three (3) experts retained by the Government who do not work for a competitor of GE in this area,

provided however that such GE Confidential Information shall not be made available or disclosed to said P & W independent experts or said Government experts without permission from GE in writing, which permission shall not be withheld unreasonably.

5. No person or party shall make use of any information obtained pursuant to pre-trial discovery in this litigation, which shall have been designated as GE Confidential Information, other than for purposes of this litigation, without further order of the Court.

6. The restrictions set forth in any of the preceding paragraphs shall not apply to information which (a) was, is, or becomes public knowledge outside the Government, not in violation of this Order, or (b) was, or is, acquired independently in good faith from a party, other than GE, who is not subject to this Protective Order.

7. This Order is without prejudice to any party to bring before the Court at any time the question of whether any particular information is or is not confidential, or to GE to defend said confidential designation; upon such hearing the party asserting non-confidentiality shall have the burden of establishing non-confidentiality.

8. Any party claiming to have acquired independently and in good faith, information designated as GE Confidential Information, shall have the burden of proving such independent acquisition and good faith.

9. Nothing in this Order shall be deemed a waiver of GE's rights to oppose production of any information or documents for lack of timeliness or relevance or materiality, or as a privileged communication, or as work product of counsel, or as not reasonably calculated to lead to the discovery of admissible evidence.

10. Upon final termination of this litigation, each party or other person subject to the terms of this Order, shall be under an obligation to assemble and return to the originating source, or destroy, all materials and documents designated GE Confidential Information and all copies thereof, and all other materials, memoranda or documents embodying data derived from said materials and documents, provided, however, that the obligation to maintain in confidence the information previously designated GE Confidential Information shall continue until such time as the information becomes publically available outside the Government.

11. No one may view or have disclosed to them any of the GE Confidential Information until GE has received a copy of a signed statement filed in Court in which the person seeking the information personally states that he/she has read this Protective Order, agrees to be bound by its terms, agrees to not reveal the GE Confidential Information to others who have not submitted a signed statement to the Court and GE, and agrees not to utilize the information for any purpose other than this litigation suit.

/s/ H. Robert Mayer
H. ROBERT MAYER
Judge, United States Claims Court

Date 5 June 85