# In the United States Court of Federal Claims

No. 15-1034C

(E-Filed: July 13, 2016)

|  |  |  |
|---|---|---|
| DNC PARKS & RESORTS AT YOSEMITE, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Motion for Protective Order; RCFC 26(c)(1)(G); Trade Secrets; |
| v. | ) ) | Competitive Standing. |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

Thomas P. McLish, Akin, Gump, et al., Washington, D.C., for plaintiff.

John H. Roberson, Senior Trial Counsel, Commercial Litigation Branch, United States Department of Justice, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Robert E. Kirschman, Jr., Director; Bryant G. Snee, Deputy Director; and for defendant. Scott Bolden, United States Department of Justice, Washington, D.C., of counsel.

## ORDER

CAMPBELL-SMITH, Chief Judge

Before the court is a motion for protective order brought by DNC Parks & Resorts at Yosemite, Inc. (plaintiff or DNCY) against the United States of America (defendant or the government), seeking to maintain under seal an Intellectual Property Valuation Final Report prepared in 2010 (2010 Valuation Report). The 2010 Valuation Report was marked "confidential" and filed under seal in the instant action on March 17, 2016. Pl.'s Mot. for Prot. Order (Pl.'s Mot.) 3, ECF No. 18.

In this action, plaintiff alleges that the government has breached the contract under which DNCY provides concession services in Yosemite National Park. Compl. 1, ECF No. 1. Plaintiff also alleges that defendant has breached an "implied-in-fact obligation to DNCY" to conduct a fair competition for the new concession contract at Yosemite. Id. at 2.

Prior to the filing of plaintiff's motion for protective order, the government moved for leave to file a motion to stay, Def.'s Mot. for Leave, ECF No. 15, to which it attached a sealed motion to stay and a copy of the 2010 Valuation Report, Def.'s Mot. to Stay, ECF No. 16-2 (Exhibit D). The government explained that it desired to file the motion to stay without seal, but that plaintiff had expressed concern about the disclosure of the 2010 Valuation Report. The government requested that the court allow defendant to file an unsealed motion to stay if DNCY did not file a timely motion for protective order to maintain the 2010 Valuation Report under seal. Def.'s Mot. for Leave 1-2. The court granted defendant's motion for leave and directed plaintiff to file a response to the motion to stay and, if desired, a motion for protective order. Order, ECF No. 17.

Shortly thereafter, DNCY filed a timely motion for a protective order. Pl.'s Mot. Plaintiff urges the court to allow the 2010 Valuation Report to remain under seal to avoid the public disclosure of its confidential commercial information. Id.

The government responded opposing DNCY's motion for a protective order, asserting that DNCY has not offered any "compelling justification" for maintaining the seal. Def.'s Opp'n to Pl.'s Mot. for Prot. Order (Def.'s Opp'n) 4, ECF No. 27. In the alternative, the government proposes the redaction of limited portions of the 2010 Valuation Report to safeguard the confidential information of concern from public disclosure. Id. at 17.

DNCY asks the court to maintain the entire 2010 Valuation Report under seal due to the risk that it might suffer a competitive disadvantage were its confidential information to be disclosed. Pl.'s Reply 8, ECF No. 28. Alternatively, DNCY requests that specifically identified confidential information remain under seal. Id.

For the reasons discussed below, the plaintiff's motion for a protective order maintaining the entire 2010 Valuation Report under seal is **GRANTED**.

I.      Legal Standards

The public's right to inspect and to copy judicial records and documents is well-recognized. Nixon v. Warner Commc'ns et al., 435 U.S. 589, 597 (1978); Black v. United States, 24 Cl. Ct. 461, 464 (1991)[1] (stating that the right of access to judicial records extends to the judicial, the legislative, and the executive branches of government). All "pleadings, orders, notices, exhibits and transcripts [in a proceeding]… are made publically available through the clerk unless the records are expressly filed in camera." Pratt & Whitney Can. Inc. v. United States (Pratt), 14 Cl. Ct. 268, 272 (1988) (explaining that the right of public access applies to records in criminal, as well as civil,

---

[1]      The Claims Court (Cl. Ct.) is the predecessor to the Court of Federal Claims and its decisions are binding authority.

adjudicatory proceedings); 28 U.S.C. § 174(b) (providing that "all decisions of the Court of Federal Claims shall be preserved and open to inspection").

The public's right to inspection and to copying is not, however, absolute. Courts exercise supervisory power over their own records and files, and may deny any requests for access made for improper purposes. Nixon, 435 U.S. at 598 (denying access to judicial records to avoid potential harm to a litigant's competitive standing by the disclosure of confidential business information). In Nixon, the Supreme Court reasoned that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of that particular case." Id. at 599 (urging courts to weigh confidentiality concerns against the public interest); see also Black, 24 Cl. Ct. at 464 (acknowledgment by the Claims Court that the court has discretion to seal documents when protected interests outweigh the public's right to access).

A. The Party Seeking a Protective Order Must Show Good Cause

Under Rule 26(c)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the court may issue protective orders either "for good cause" or "to protect a party or person" from disclosing confidential information. RCFC 26(c)(1). Because the courts' rules are modeled on the Federal Rules of Civil Procedure, the court considers case law interpreting the correlative rules. See In re Violation of Rule 28(d), 635 F.3d 1352, 1357 (Fed. Cir. 2011) (noting that "Rule 26(c)(1) permits the issu[ance] of limited protective orders [that] prevent the discovery or disclosure of certain information, or . . . specify the use that may be made of discovered information"). The court may issue a protective order specifically "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." RCFC 26(c)(1)(G).

The party seeking protection bears the burden of demonstrating that good cause exists for restricting the disclosure of the information at issue. In re Violation, 635 F.3d at 1357. Good cause is established by showing that "specific prejudice or harm will result if no protective order is granted." Id. (quoting Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002)). Upon such a showing, the court must "balance the public and private interests" to determine whether a protective order is warranted. Id. (quoting Phillips, 307 F.3d at 1211).

A party seeking to protect confidential information must show that it took measures to safeguard the confidentiality of the information and to avoid any disclosure that would compromise the party's competitive standing. See Nixon, 435 U.S. at 598 (determining that access to judicial records can be denied if the information might harm a litigant's competitive standing); Pratt, 14 Cl. Ct. at 276 ("[E]ven where privacy interests override the common law right of public access, only those documents which contain confidential information are sealed.").

3

B.  Weighing the Right to Public Access Against Privacy Concerns

A party's interest in sealing documents is restricted by the public's presumptive access to documents, unless "a compelling justification" indicates otherwise.  Black, 24 Cl. Ct. 461 (quoting Pratt, 14 Cl. Ct. at 274).

In Black, the Claims Court determined that privacy interests and concerns about embarrassment were not compelling reasons for sealing the record.  Id.  Similarly, in Miller-Holzwarth v. United States, the plaintiff's unsupported concern about reputational harm was an insufficiently compelling ground for granting the motion to seal.  44 Fed. Cl. 153, 155 (1999).

The standards are similar for unsealing documents.  In Sikorsky Aircraft Corp. v. United States, the court denied the government's motion to unseal the trial record because the plaintiff successfully showed the competitive sensitivity of its cost-of-production evidence.  112 Fed. Cl. 313, 316 (2013).  Moreover, a motion to unseal will not be granted if the plaintiff is the victim of a crime, is an innocent third party, or is subject to either a specific statutory right of privacy, or is subject to a protective order.  See Pratt, 14 Cl. Ct. at 276-77.

Balancing the public's right to access against the risk of harm is also required in determining whether or not the redaction of confidential information – such as trade secrets – is justified.  See Crane Helicopter Servs., Inc. v. United States (Crane), 56 Fed. Cl. 313, 325 (2003); see also Apple Inc. v. Samsung Elec. Co. et al., 727 F.3d 1214, 1223-24 (Fed. Cir. 2014) (reasoning that when financial information is not essential to the district court's ruling on pre-trial motions or is not essential to the public's understanding of the jury's damages award, redaction is not necessary).

II.     Discussion

The court turns now to consider whether the information plaintiff wants to remain under seal merits such protection.  The court also considers what steps plaintiff has taken to protect the information and what harm might result from its disclosure.

A.  The 2010 Valuation Report Contains Trade Secrets

"[T]he court . . . first review[s] whether or not the information [at issue] contains trade secret[s]."  Crane, 56 Fed. Cl. at 322.  If it does not, the information may not warrant sealing.  Id.

This court has defined a trade secret in conformance with the Uniform Trade Secrets Act ("UTSA") as follows:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Crane, 56 Fed. Cl. at 325 (citing UTSA § 1(4) (1985)).[2] According to the UTSA, secrecy need not be absolute, but rather must be sufficiently strong to avoid ascertainment by those who could leverage an economic advantage from the information. Crane, 56 Fed. Cl. at 325 (finding that information concerning the differences between two helicopters should remain sealed because developing the pertinent trade secrets was costly, time consuming and difficult).

DNCY's 2010 Valuation Report contains business information from which the government, as well as others, could derive economic value. Thus, the court deems it to contain trade secrets.

B. DNCY Took Measures to Maintain the Confidentiality of the Trade Secrets

A party seeking to protect confidential financial information must show the measures it has taken to maintain the confidentiality of the information. Nixon, 435 U.S. at 598.

DNCY has taken a number of steps to maintain the confidentiality of the 2010 Valuation Report for which it commissioned the preparation. See Pl.'s Mot. 3. Upon the drafting of the 2010 Valuation Report by CONSOR Intellectual Asset Management, DNCY marked the report as "confidential." Id. Subsequently, when DNCY provided the 2010 Valuation Report to the National Park Service in an attempt to resolve the valuation dispute, it again marked the report as "confidential." Id. at 3, 6 (citing Aff. of Thomas M. Barney ¶ 15, ECF No. 20; Ex. G, ECF No. 20-7). The court is satisfied that DNCY took affirmative steps to preserve the confidentiality of the 2010 Valuation Report, due to the sensitive information it contained.

---

[2]     The court and the parties in Crane specifically adopted the UTSA through incorporation into a protective order noting that it has also been adopted by forty-four states. Crane, 56 Fed. Cl. at 322 (citing Jager, Trade Secrets Law § 3.05[1] at 3–70 (listing states that have adopted UTSA with accompanying citations to relevant sections of state codes)).

C.  By Maintaining the Confidentiality of Its Trade Secrets, DNCY has Protected its Competitive Standing

DNCY argues that unsealing the defendant's motion to stay would put it at a competitive disadvantage in "future competitions for other concession contracts" because the 2010 Valuation Report contains DNCY's operating margin for the years 2005 through 2009. Pl.'s Mot. 3. The 2010 Valuation Report also contains detailed information about DNCY's revenues, according to operational category and location. Id. at 6-7, 9.

The government challenges DNCY's assertion, asserting that DNCY has "offer[ed] no explanation[]" either about the criteria it used to value "any of the four categories of its operations" or about "why the income streams and operating costs at Yosemite would correlate with income streams and operating costs at other National Parks." Def.'s Opp'n 13-14. The government deems it "incongruous" for DNCY to argue that it would be competitively harmed in future concession bids by sharing the 2010 Valuation Report with the incoming concessioner, Yosemite Hospitality LLC ("Aramark"), while DNCY also expressed a willingness to provide the 2010 Valuation Report if Aramark were reciprocally willing to share its valuation analysis of DNCY's property. Id.

Defendant misses the mark. DNCY may exercise its prerogative in deciding with whom – and on what terms – it chooses to share the confidential, competitive information it has paid to compile and ultimately, how it manages its competitive edge.

The court finds that the disclosure of the 2010 Valuation Report, which contains DNCY's operating margin for the years 2005 through 2009 and a detailed listing of DNCY's revenues by location and operational category, would allow DNCY's competitors access to important economic information about DNCY. The particular details in the 2010 Valuation Report, such as the level of importance DNCY places on different aspects of its business, by the breakdown of revenues by operational category, could be used to the advantage of DNCY's competitors in the preparation of bids for future concession contracts.

DNCY's competitive standing, however, can be preserved by maintaining the confidentiality of its trade secret information through a protective order. See Pratt, 14 Cl. Ct. at 275. In Pratt, the Claims Court permitted the parties to move for redaction of those portions of the proceedings that had not been made available to the public. Id. at 276-78. DNCY has maintained, with care, the confidentiality of the 2010 Valuation Report. This care has preserved DNCY's competitive standing. Moreover, given the nature of the report, it is unclear whether even an extensive redaction could properly preserve DNCY's trade secret information. Accordingly, the court exercises its discretion to leave undisturbed the protective seal now in place.

III.    Conclusion

For these reasons set forth more fully above, the plaintiff's motion for a protective order is **GRANTED**.  Defendant's March 17, 2016 motion to stay proceedings, ECF No. 16, shall **REMAIN** under seal.

IT IS SO ORDERED.


 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge