■ WHITEBOX CONVERTIBLE ARBITRAGE PARTNERS, L.P., et al., Respondents, v FAIRFAX FINANCIAL HOLDINGS, LTD., Appellant. [900 NYS2d 56]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered October 29, 2008, which denied defendant's motion to dismiss the complaint, unanimously affirmed.

This is an action for breach of an indenture agreement, dated as of July 14, 2003. Plaintiffs (collectively, Whitebox) are approximately two thirds of the debenture holders. The only contested issue is the meaning of a single sentence, albeit an inordinately long one, in the indenture.

In July 2003, defendant Fairfax, a Canadian financial services holding company, issued $200 million (U.S.) worth of 5% convertible senior debentures due July 15, 2023 (the notes). The indenture governing the notes states that the notes are convertible into subordinate voting shares of Fairfax (the shares) using a defined conversion rate (conversion rate) set forth in section 10.2 of the indenture (initially 4.7057 shares per $1,000 [U.S.] note).

Section 10.3 of the indenture sets out formulas for conversion rate increases in the event of, inter alia, a stock dividend to shareholders (§ 10.3 [a]), issuance of rights or warrants (§ 10.3 [b]), a stock split (§ 10.3 [c]) or a cash dividend (§ 10.3 [f]). Concerning cash dividends, section 10.3 (f) provides for an adjustment to the conversion rate as follows:

"(f) In case [Fairfax] shall, by dividend or otherwise, *distribute* to all holders of its Shares cash (regardless of whether such dividend or distribution is received and accepted by any holder of outstanding shares) (excluding any dividend or distribution in connection with the liquidation, dissolution or winding up of the Company, whether voluntary or involuntary), to the extent that the aggregate amount of any such cash distributions and dividends in *any 12-month period* exceeds, with respect to the period:

"(A) prior to July 15, 2008 Cdn$3.00 per Share (or if such distribution or dividend is declared in U.S. dollars, as determined using the noon buying rate in The City of New York for cable transfers in Canadian dollars as certified for customs purposes by the Federal Reserve Bank of New York on the date such distribution or dividend is declared); or

"(B) on or after July 15, 2008, 4.0% of the Current Market Price (as defined in Section 10.3 (g)) of the Shares,

*"in each case as determined on the Record Date for such distribution or dividend,* then, in such case, the Conversion Rate shall be increased so that the same shall equal the rate determined by multiplying the Conversion Rate in effect on the applicable Record Date by a fraction [specified in two clauses in the immediately following text], such adjustment to be effective immediately prior to the opening of business on the day following the Record Date" (emphasis added).

Section 10.3 (g) (iii) of the indenture defines the "Record Date" with respect to cash dividends as "the date fixed for determination of shareholders entitled to receive such cash, securities or other property (whether such date is fixed by the Board of Directors or by statute, contract or otherwise)." Section 10.3 (i) provides that cash dividends (like other distributions) do not

mandate an immediate increase in the conversion rate unless the increase would be at least 1% of the existing conversion rate. If the required conversion rate is below this level, Fairfax may defer it, i.e., have it "carried forward and taken into account in any subsequent adjustment."

On January 4, 2007, Fairfax declared an annual dividend of $2.75 (U.S.) per share and a record date of January 25, 2007. Fairfax distributed this dividend on February 8, 2007. On January 2, 2008, Fairfax declared an annual dividend of $5.00 (U.S.) per share and a record date of January 14, 2008. Fairfax distributed this dividend on February 11, 2008. There is no dispute that, standing alone, neither dividend would require an immediate increase in the conversion rate. Thus, Fairfax could defer the increase under section 10.3 (i), unless it was required to combine the two dividends because they fell within the same 12-month period. Whitebox contends that Fairfax was so required. Focusing on the language "in each case as determined on the *Record Date* for such distribution or dividend" (emphasis added), Whitebox reads section 10.3 (f) of the indenture to measure the 12 months by the record dates of the dividends (i.e., January 25, 2007 and January 14, 2008). Fairfax takes the position, however, that the distribution dates of the dividends (i.e., February 8, 2007 and February 11, 2008) determine the 12-month period.

Whitebox subsequently sued Fairfax for breach of the indenture for refusing to increase the conversion rate; it sought specific performance and declaratory relief. Fairfax moved to dismiss for failure to state a claim based on its interpretation of the language in the indenture. In addition, Fairfax argued that Whitebox failed to comply with certain conditions of the indenture before commencing suit. The motion court agreed with Whitebox, finding that the "[i]ndenture unambiguously states that the determination of whether the dividend exceeded Cdn$3.00 per share in any twelve month period is 'as determined on the Record Date.' " Accordingly, the motion court denied Fairfax's motion to dismiss.

We affirm, but for a different reason—the language of section 10.3 (f) of the indenture is ambiguous. The opening language thereof, by using the words "*distribute* to all holders of its shares cash," is consistent with an intent to have the 12-month period measured by the dates cash dividends and distributions are distributed, which is not, of course, the record date. Under that reading, because the dividends were distributed more than 12 months apart—and because the 2008 dividend did not itself exceed the amount set forth in subsection (A)—an increase in

the conversion rate would not be required. This reading gives meaning to the unambiguous word "distribute," the first verb used in this anfractuous sentence. A reading that focuses on the "distribut[ion]" of the cash is, at the least, reinforced by the word "such" in the words following closely on the heels of the verb (but after the successive parentheticals). Thus, the words "to the extent that the aggregate amount of any such cash distributions and dividends" refer back to the "distribute[d]" cash dividends or distributions described in the opening words of the sentence (rather than to those described in the second parenthetical). Moreover, the indenture "reveals a logical reason" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 163 [1990] [internal quotation marks omitted]) for the phrase upon which Whitebox pins its hopes, "in each case as determined on the Record Date for such distribution or dividend." That is, any adjustment in the conversion rate is required "to be effective immediately prior to the opening of business on the day following the Record Date" and the extent of the adjustment is based on the conversion rate and "Current Market Price" on the record date.

By contrast, under Whitebox's reading, the word "distribute" is assigned a limited office, even if it is not rendered surplusage (*cf. Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]). Under its reading, the word serves only to reinforce what other provisions of the indenture make clear, i.e., that distribution of a cash dividend or other distribution is a necessary condition to an adjustment in the conversion rate on account of such a distribution. On the other hand, to the extent that is a flaw in Whitebox's position, Fairfax's explanation for the words "in each case as determined on the Record Date" appears to suffer from the same flaw.

With respect to the actual position in the sentence of the phrase "in any 12-month period," we note that Fairfax's position surely would be strengthened if the sentence read "In case [Fairfax] shall, by dividend or otherwise, distribute in any 12-month period to all holders . . . ." The actual text, however, is not rendered ambiguous simply because it can be improved. The extent to which, as a matter of grammar, the hypothetical variant and the actual text can be distinguished is a nice question.

In the final analysis, we conclude that the sentence is ambiguous, i.e., reasonably susceptible of two meanings (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 66 [2008], *affd* 13 NY3d 398 [2009]), largely because it is not sufficiently clear whether the phrase "in each case as determined on the Record Date for such distribution or dividend" refers

exclusively to the two periods defined in subsections (A) and (B), or refers back as well to what the sentence expressly describes as a "case," i.e., the "distribut[ion] to all holders of its shares" (cf. Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 127 [2008, Read, J., dissenting] [discussing "grammatical 'rule of the last antecedent,' " pursuant to which referential words, "where no contrary intention appears, refer solely to the last antecedent," but noting that "this rule is not an absolute and can assuredly be overcome by other indicia of meaning"]).

Because the sentence is ambiguous, extrinsic evidence is admissible to resolve it (Ender v National Fire Ins. Co. of Hartford, 169 AD2d 420, 421 [1991]). As further proceedings are necessary, we note that Whitebox is unpersuasive in seeking to buttress its reading by pointing to seemingly odd results that could follow from Fairfax's reading. We think it plain that apparent oddities can be conceived under both readings.

As for Fairfax's remaining arguments, we agree with the motion court that while Whitebox breached the "Limitation on Suits" provision of the indenture, the trustee explicitly waived its right to rely on that provision as a bar to this action (see Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d 65, 69 [2003], lv dismissed 2 NY3d 794 [2004]). The trustee chose, in its discretion, to comply with Whitebox's direction to waive the "Limitation on Suits" provision, as the indenture's "Control by Majority" provision authorizes. Concur—Andrias, J.P., Friedman, McGuire and Moskowitz, JJ.