# United States Court of Appeals for the Federal Circuit

---

## IN RE VIOLATION OF RULE 28(D)

---

Miscellaneous Docket No. 976

---

Appeal from the United States District Court for the District of New Jersey in consolidated case no. 07-CV-2762, Judge Joel A. Pisano.

---

Decided: March 29, 2011

---

Before DYK, PROST, and MOORE *Circuit Judges.*

DYK, *Circuit Judge.*

In this order we address whether counsel for Defendants-Appellants Sun Pharmaceutical Industries, Ltd. and Caraco Pharmaceutical Laboratories, Ltd. (collectively "Sun") should be sanctioned for the extensive use of improper confidentiality markings in the briefs filed by Sun contrary to Rule 28(d) of the Federal Circuit Rules. We conclude that the use of such markings was improper, and we impose sanctions on counsel in the amount of $1,000.

I

Some background regarding the underlying litigation is necessary to understand the context of the sanctions order. In 2007, Sanofi-Aventis U.S. LLC ("Sanofi") sued Sun and other generic drug manufacturers alleging the infringement of Sanofi's patent, which claimed the colorectal cancer drug oxaliplatin. By mid-2009, Sanofi and Sun reached a settlement and entered into a license agreement. The license agreement set forth a specific "Launch Date" (the later of August 9, 2012, or the date on which Sun received final FDA approval for its generic version of oxaliplatin) on which Sun would be granted "a non-exclusive license . . . to make, have made, import, market, offer for sale, and sell the Licensed Products in the Territory." J.A. 235–36. The license agreement also permitted Sun to market its generic drug prior to the Launch Date, but only if other generic manufacturers were also on the market. Section 3.5 of the license agreement provided:

> In the event that, during the term of the Licensed Patents and without Sanofi's permission, *any defendant in the Consolidated Eloxatin Patent Litigation sells a generic version of a Sanofi NDA Product in the Territory prior to a Final Court Decision ("At-Risk Launch"), [Sun] will have the option of selling its Generic Equivalent prior to the Launch Date*.

J.A. 237 (emphasis added). But the license agreement also provided that Sun would stop selling under certain circumstances:

> Should Sun exercise such an option and *a Court subsequently enters a decision(s) enjoining each such At-Risk Launch product(s), Sun agrees that Sun will not sell* its Generic Equivalent *from the*

>*time the Court enters an injunction(s)* against each such At-Risk Launch Product(s) until the Launch Date.

J.A. 237–38 (emphases added).

Also part of the settlement agreement was a proposed consent judgment which enjoined Sun from making, using, or selling generic oxaliplatin except in the limited circumstances provided for in the license agreement. J.A. 229.

In sum, if other defendants were on the market prior to a "Final Court Decision" in the underlying infringement suit, Sun would also be permitted to market its version of the generic drug before the Launch Date. But if "a Court subsequently enter[ed] a decision(s) enjoining" each of the other defendants from selling its version of the generic drug, Sun would also be enjoined. J.A. 237–38.

Shortly after Sanofi and Sun reached an agreement regarding settlement, the district court denied summary judgment of invalidity but granted summary judgment of non-infringement. *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 07-CV-2762, 2009 WL 1741571, at *1 (D.N.J. June 18, 2009). Sanofi then refused to deliver a fully executed version of the settlement documents to Sun. As a result, the consent judgment was never entered by the district court.

Following at-risk launches by other defendants, Sun launched a licensed version of generic oxaliplatin pursuant to Section 3.5 of the license agreement. Sanofi subsequently reached settlement agreements with the other defendants, each of which included a proposed consent order with a specific provision enjoining the defendants from further sales of generic oxaliplatin from June 30,

2010 until August 9, 2012.  These orders were entered by the district court on April 14, 2010.

Sanofi then sought to stop further sales by Sun.  Sanofi requested that the court enter a revised version of the original consent judgment enjoining Sun from continuing to sell its generic version of oxaliplatin.  *See* J.A. 467.  Sun opposed entry of the revised consent judgment, arguing that it did not reflect the terms of the license agreement.  The district court entered the revised version of the consent judgment proposed by Sanofi, which provided:

> *If all other defendants are enjoined as of June 30, 2010, or on some later date, then Sun . . . [is] hereby enjoined* as of June 30, 2010, or that later date, from manufacturing, using, offering to sell, or selling within the United States, or importing into the United States, the oxaliplatin for injection defined by ANDA No. 78-818.

J.A. 473 (emphasis added).  Sun appealed the revised consent judgment to this court.

On appeal, Sun argued that the revised consent judgment was inconsistent with the license agreement.  Sun argued that injunctions entered pursuant to a consent decree "are not 'decision(s)' of the court"; therefore, such injunctions did not trigger the provision of the license agreement requiring Sun to stop marketing its generic drug.  Appellant's Br. 24.  After oral argument, we issued a non-precedential opinion concluding that Section 3.5 of the license agreement was ambiguous because it was unclear "whether a 'decision' includes a consent judgment and injunction resulting from a settlement between parties or whether it requires an injunction issued by a court following a decision on the merits."

5

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 2010-1338, 2010 WL 5393659, at *4 (Fed. Cir. Dec. 22, 2010). We vacated the revised consent judgment and the resulting injunction, and remanded to the district court to resolve the ambiguity in the license agreement. *Id.* at *6.

II

In the briefing on the merits of the appeal, both parties marked as confidential discussion of aspects of the license and settlement agreements. At oral argument we questioned whether such confidentiality markings were appropriate under Rule 28(d) of the rules of this court and Rule 26 of the Federal Rules of Civil Procedure. Following argument, Sun submitted a motion to modify the protective order to remove the confidentiality designations. We granted the motion. *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 2010-1338, slip op. at 3 (Fed. Cir. Dec. 21, 2010).

At oral argument we did not suggest that marking the license and settlement agreements as confidential was itself sanctionable. But we raised the question of whether counsel for Sun had violated our rules by marking confidential those parts of its briefs that set forth Sun's legal argument. Examples of the confidentiality markings contained in the brief submitted by Sun are included in an Addendum to this opinion. With few exceptions, the legal argument in Sun's brief was entirely marked confidential. Following oral argument, we issued a show-cause order, which provided in pertinent part:

> The brief submitted by Defendants-Appellants contains extensive confidentiality markings pertaining to case citations, direct quotations from published opinions of the cases cited, and legal argument, none of which appear to fall under the protective order entered by the district court. It

thus appears that Defendants-Appellants marked material as confidential in violation of the rules of this court.

Accordingly,

IT IS ORDERED THAT:

Within 14 days of this order, Defendants-Appellants are ordered to show cause why this court should not impose sanctions for the violation of Federal Circuit Rule 28(d) due to the improper use of confidentiality markings.

*Sanofi-Aventis v. Sandoz, Inc.*, No. 2010-1338, slip op. at 1–2 (Fed. Cir. Dec. 7, 2010). In response to the show-cause order, Sun did not admit to any error, but attempted to justify the use of such extensive confidentiality markings by arguing:

> Sun did not intend to be overzealous in designating material as confidential, but was concerned that citation to certain case law would have revealed to a reader key terms contained in, and facts about, the Settlement and License Agreements. . . . Absent designation of this material as confidential, Sun was concerned that the discussion of the case law and other authority itself would effectively divulge the terms of the agreements that had been filed under seal and were, therefore, governed by the Protective Order.

Defendants-Appellants Sun Pharm. Indus., Ltd. and Caraco Pharm. Labs., Ltd.'s Response to December 7, 2010, Order at 3-4, *Sanofi-Aventis v. Sandoz, Inc.*, No. 2010-1338 (Fed. Cir. Dec. 20, 2010). In granting the

motion to remove the confidentiality markings, we made clear that "[t]he granting of Sun's unopposed motion does not resolve the pending Show Cause Order concerning possible sanctions." *Id.* at 3 n.1.

### III

In determining whether our rules were violated, some background is helpful. There is a strong presumption in favor of a common law right of public access to court proceedings. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978). In *Nixon*, the Supreme Court specifically recognized the existence of "a general right to inspect and copy public records and documents, including judicial records and documents." *Id.* at 597 (citations omitted). Similarly, in *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989), the Seventh Circuit recognized that "[t]his [common law] right of access establishes, as a general matter, that court files should be open to the public for inspection and copying." In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579 (1980), the Supreme Court also recognized a First Amendment right of public access to court proceedings.

Though the presumption of public access to judicial proceedings and records is strong, it "is not absolute." *Nixon*, 435 U.S. at 598. For example, in *Nixon*, the Supreme Court noted that the public right of access is limited by the court's "supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes," for example, "as sources of business information that might harm a litigant's competitive standing." *Id.* at 598. In determining whether to restrict the public's access to court documents, the court must "weigh[ ] the interests advanced by the parties in light of the public interest and the duty of the courts." *Id.* at 602. In *Corbitt*, the court

noted that while "the common law right of access creates a 'strong presumption' in favor of public access . . . , this presumption should not apply to materials properly submitted to the court under seal."  879 F.2d at 228 (citation omitted).

## IV

Federal Rule of Civil Procedure 26(c)(1), though added in 1970 before the Supreme Court decisions in *Nixon* and *Richmond Newspapers*, appears to be consistent with these decisions.  It is well settled that Rule 26(c)(1) does not furnish an absolute privilege against disclosure of material that a party might wish to mark confidential. *See Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 362 n.24 (1979); *see also* 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2043 (3d ed. 2010).  Instead, Rule 26(c)(1) permits the court to issue limited protective orders to prevent the discovery or disclosure of certain information, or to specify the use that may be made of discovered information.  Fed. R. Civ. P. 26(c)(1).

Subsection G, which permits the court to issue a protective order covering certain classes of commercial information, states:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for *good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . . .
>
> > (G) *requiring that a trade secret or other confidential research, development, or*

> *commercial information not be revealed or*
> *be revealed only in a specified way . . . .*

Fed. R. Civ. P. 26(c)(1)(G) (emphases added). When what is now subsection G was added in 1970, the Advisory Committee Notes characterized the addition of "[t]he new reference to trade secrets and other confidential commercial information" as an addition that "reflects existing law." Fed. R. Civ. P. 26(c) advisory committee's note to 1970 amendment. The Committee also observed that "[t]he courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure," frequently affording only "limited protection." *Id.*

Under Rule 26(c)(1), protective orders restricting the disclosure of information may only be issued for "good cause." Fed. R. Civ. P. 26(c)(1). The party seeking protection bears the burden of demonstrating that there is good cause for restricting the disclosure of the information at issue. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *see also Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998); *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir. 1989); *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740 (Fed. Cir. 1987); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7–8 (1st Cir. 1986); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985); *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). Where good cause is shown, the presumption of public access "dissipates, and the district court can exercise its sound discretion" to limit disclosure. *Harris*, 768 F.2d at 684.

For good cause to exist, the party seeking to limit the disclosure of discovery materials must show that "specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210–11 (vacating and remanding based on the district court's failure to evaluate the harm that would result from disclosure). If the party seeking protection meets this burden, the court must then "balance[ ] the public and private interests" to determine whether a protective order is warranted. *Id.* at 1211. The district court's decision to seal a portion of the record is reversible for abuse of discretion. *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983).

Where the party seeks to limit the disclosure of information actually introduced at trial, an even stronger showing of prejudice or harm may be required to warrant limitations on disclosure. For example, where the district court's protective order extended to materials that were admitted into evidence, the First Circuit noted that "the ordinary showing of good cause which is adequate to protect discovery materials from disclosure cannot alone justify protecting such material after it has been introduced at trial." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993) (emphasis omitted). The court concluded that "only the most compelling showing can justify" limitations on the disclosure of "testimony or documents actually introduced at trial." *Id.* Garden Way's generic "claim that the company's image among customers will be damaged" was outweighed by the public's interest in access to trial records. *Id.*

Parties frequently abuse Rule 26(c) by seeking protective orders for material not covered by the rule. Our sister circuits have repeatedly condemned the improper use of confidentiality designations. For example, in *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994), the court noted the growing trend in

commercial cases of litigants agreeing to seal discovery documents as well as pleadings and exhibits filed with the court. The court noted that "[e]ven if the parties agree that a protective order should be entered, they still have 'the burden of showing that good cause exists for issuance of that order.'" *Id.* (citation omitted).

Similarly, in *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 222 (6th Cir. 1996), the parties agreed to "a broad stipulated protective order" that permitted the parties to designate material as confidential and file such material under seal "without court approval for 'good cause' as required by Rule 26." The Sixth Circuit observed that an agreement of this type permitted "[t]he parties and not the court [to] determine whether particular documents met the requirements of Rule 26," *id.*, and effectively allowed the parties "to adjudicate their own case based upon their own self-interest" in violation of Rule 26(c), *id.* at 227. The court reversed the district court's order, noting that the district court "cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public" simply because the parties agree to the protective order. *Id.*

V

There is no rule in the Federal Rules of Appellate Procedure that deals directly with confidentiality markings in appellate briefs. However, Federal Circuit Rule 28(d) permits parties to mark information in briefs as confidential, but only if the material is "subject to confidentiality mandated by statute or to a judicial or administrative protective order." Fed. Cir. R. 28(d)(1). Implicit in our rule is a requirement that the district court protective order comply with Rule 26 of the Federal Rules of Civil Procedure. The protective order entered by the district

court in this case permitted the parties to designate as confidential "any form of trade secret or other confidential research, development, or commercial information within the meaning of Fed. R. Civ. P. [26(c)(1)(G)]."[1] *Sanofi-Aventis U.S. LLC v. Sun Pharm. Indus., Ltd.*, No. 07-CV-03411, at 7 (D.N.J. Dec. 14, 2007), ECF No. 35. The protective order further provided:

> If any party files [information designated as confidential] . . . in connection with any motion, other written submission, hearing or trial in this action, the filing party shall make such filing under seal and shall simultaneously file a motion to seal such information . . . ; provided, however, that the burden of proving that such information should be sealed . . . shall at all times remain on the party which designated the information [as confidential].

*Id.* at 19. Thus, the order properly required the parties to establish good cause and required the court to rule on the parties' motions to seal.

The license agreement and proposed consent judgment were designated as confidential and filed under seal by Sun pursuant to the protective order. *See Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 07-CV-2762, at 1

---

[1] The protective order references Rule 26(c)(7), but we assume that the order intended to refer to Rule 26(c)(1)(G), which mirrors the language used in the order and permits the court to issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

(D.N.J. Sept. 24, 2009), ECF No. 492 (granting Sun's motion to seal its Brief in Support of Motion for Miscellaneous Relief and the settlement documents attached as exhibits). In its motion to seal, Sun argued that the settlement documents should be sealed in order to maintain the confidentiality of private settlement discussions. In the order granting Sun's motion, the district court noted that, although "there is 'a presumptive right of public access,'" the parties "have legitimate, competitive and business interests in preventing public disclosure." *Id.* at 2.

We need not decide whether the district court protective order properly granted confidentiality to the items in question. For purposes of this order we assume that the license and settlement agreements at issue in this case were properly the subject of a protective order (although we note that at oral argument the parties agreed to lift the confidentiality designation). But even if the agreements were properly designated as confidential in the district court, the confidentiality markings employed by Sun concerning case citations, direct quotations from the published opinions of the cases cited, and legal argument, were improper.

On appeal, the dispute centered around what event would trigger the requirement that Sun cease marketing its generic version of oxaliplatin. The existence and nature of this triggering event could not properly be designated as confidential. The injunctive order entered by the district court was not designated as confidential, and it could not properly have been so designated. It stated that "[u]nder the license agreement," Sun's obligation to cease marketing its generic product had been triggered by "an injunction . . . preventing the other defendants from selling their [generic] product[s] at risk." J.A. 3. Because the existence and nature of the trigger-

ing event was publicly disclosed in the consent judgment, legal argument pertaining to the triggering event was not and could not be properly marked as confidential regardless of the confidential designation of the license agreement.

The marking as confidential of legal argument concerning the propriety of a decision by the court is generally inappropriate given the strong presumption of public access to court proceedings and records. Rule 26(c)(1)(G) is limited to commercial information that has competitive significance. The marking of legal argument as confidential under Rule 26(c)(1)(G) cannot be justified unless the argument discloses facts or figures of genuine competitive or commercial significance. That is certainly not the case here, and there is no claim that it is.

Though it is impossible to define the exact contours of what may and may not be marked as confidential pursuant to Rule 28(d), it is clear that the parties must confine their confidentiality markings to information covered by a protective order. Here, the confidentiality markings in the brief of Defendants-Appellants went well beyond the scope of the protective order, which extended only to the agreements themselves, not to the nature of the dispute.

Further, much of the material marked as confidential does not even disclose the nature of the triggering event. For example, legal argument regarding the preclusive effect of consent judgments was marked as confidential in the briefs submitted by Sun. *See* Addendum at i–ii. One of the most blatant examples of improper confidentiality markings involves case citations and parentheticals describing the cited cases which are used to support the proposition that "parol evidence should have been examined to resolve the ambiguity and determine the intent of the parties." *See id.* at iii–iv.

15

The confidentiality markings in this case were so extensive that the non-confidential version of the brief is virtually incomprehensible. For example, on nineteen of the thirty-four pages in Sun's opening brief all material information is marked as confidential and thus omitted from the public version of the brief. *See* Non-Confidential Brief of Defendants-Appellants, *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 2010-1338, 2010 WL 5393659 (Fed. Cir. Dec. 22, 2010). No good faith reading of our rule could support Sun's marking of its legal arguments as confidential. The action of Sun's counsel bespeaks an improper casual approach to confidentiality markings that ignores the requirements of public access, deprives the public of necessary information, and hampers this court's consideration and opinion writing.

By designating material as confidential that falls outside the scope of the protective order, counsel for Defendants-Appellants violated Federal Circuit Rule 28(d).

VI

Federal Rule of Appellate Procedure 46(c) permits this court to "discipline an attorney who practices before it . . . for failure to comply with any court rule." Fed. R. App. P. 46(c). This court has explicitly recognized that, under Rule 46, it "has authority to impose sanctions for violations of the Federal Rules of Appellate Procedure or of its own rules." *In re Violation of Rule 28(c)*, 388 F.3d 1383, 1385 (Fed. Cir. 2004). In *In re Violation of Rule 28(c)*, the court chose not to impose sanctions for an inadvertent violation of the court's rules, but cautioned that "it is the duty of counsel to familiarize themselves with the applicable rules, and that, in future cases, serious violations of applicable rules, whether or not 'inadvertent,' will potentially subject counsel to sanctions." *Id.* The court further explained that "this court, in order to get its work done,

must insist on strict compliance with its rules." *Id.* Here the violation of Rule 28(d) was severe. Permissible sanctions under Rule 46(c) include the imposition of monetary sanctions. *United States v. Bush*, 797 F.2d 536, 538 (7th Cir. 1986); 16AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3992.2 (4th ed. 2010). A $1,000.00 sanction is appropriate in this case.

Accordingly,

IT IS ORDERED THAT:

Monetary sanctions in the amount of $1,000.00 are imposed on Daniel P. Shapiro, counsel for Sun Pharmaceutical Industries, Ltd. and Caraco Pharmaceutical Laboratories, Ltd., payable within thirty days to the clerk of this court for the violation of Federal Circuit Rule 28(d).

# ADDENDUM


### Examples of Improper Confidentiality Markings In Sun's Briefs


All of the following material was marked as confidential in Sun's briefs except for the one italicized sentence on page ii.


"The Settlement Agreement Does Not Support an Injunction."


Brief of Defendants-Appellants at 24, *Sanofi-Aventis v. Sandoz, Inc.*, No. 2010-1338, 2010 WL 5393659 (Fed. Cir. Dec. 22, 2010).


Courts have repeatedly held that consent orders are not "decision(s)" of the courts. For example, numerous courts, including the United States Supreme Court, have held that a consent judgment will not have issue preclusion effect with respect to any subsequent action because none of the issues have actually been litigated and the judgment reflects no adjudication on the merits. *See, e.g.*, *Arizona v. California*, 530 U.S. 392, 414 (2000) ("It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and *determined* by a valid and final judgment, and the *determination* is essential to the judgment. In the case of a judgment entered by . . . consent . . . none of the issues is actually litigated[ ]'" and thus such judgments

ordinarily have no issue preclusive effect. (emphasis added) (internal citations omitted)); *U.S. v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953) (Where there is no adjudication on the merits, "the doctrine of estoppel by [consent] judgment would serve an unjust cause: it would become a device by which a ["pro forma"] decision not shown to be on the merits would forever foreclose inquiry into the merits.").

*Id.* at 24–25.

These holdings represent sound judicial logic. On the one hand, the collateral estoppel rule is meant to promote judicial efficiency and consistency by precluding re-litigation of issues already decided by a court. However, in the case of consent judgments, there has been no "decision," and thus there is no risk of duplication or judicial inconsistency. *See In re Carrero*, 94 B.R. 306, 310 (Bankr. S.D.N.Y. 1988) ("[R]efusing to construe consent judgments as adjudicating the issues joined therein will not threaten any legitimate expectations of repose, since none of the parties to the consent judgment ever bargained for such protection. Nor will a rule giving collateral estoppel effect to consent judgments promote judicial consistency, since *the judges are not deciding anything*.") (quoting *Am. Mut. Liab. Ins. Co. v. Michigan Mut. Liab. Co.*, 64 Mich. App. 315 (Mich. Ct. App. 1975) (emphasis added).

*Id.* at 25.

Likewise, the fact that parties have settled a dispute does not, in the absence of express language to the contrary, indicate resolution or determination on the merits of any of the underlying issues that escaped formal litigation. *See, e.g.*, *Dunning v. Pacerelli*, 818 P.2d 34, 39 (Wash. Ct. App. 1991) ("Consent judgments 'are not . . . ordinarily given issue preclusion effect.' The reason is that 'the parties could settle for myriad reasons not related to the resolution of the issues they are litigating.'") (quoting *Marquardt v. Fed. Old Line Ins. Co.*, 658 P.2d 20 (1983)) (internal citations omitted).

*Id.* at 26.

In addition to this body of law arising under the collateral estoppel rule, case law makes clear that the implementation of agreed injunctions, with no independent review or analysis, are not "decision(s)" by a court. *See, e.g.*, *Dennis v. County of Fairfax*, 55 F.3d 151, 154 (4th Cir. 1995) (quoting 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4443 (1981)) ("'[T]he central characteristic' of a consent decree is 'that it does not involve consent *or decision on the merits*[.]'") (emphasis added); *Walker v. U.S. Dept. of Housing & Urban Dev.*, 912 F.2d 819, 831 (5th Cir. 1990) ("The court's approval of the consent decree in this case *is not equivalent to a 'decision' on the merits* of the action." Such a resolution "evade[s] decision completely.") (emphasis added); *U.S. v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) ("A consent decree is 'essentially a settlement agreement subject to

continued judicial policing.' *It is not a decision on the merits* or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise.") (emphasis added) (internal citations omitted); *Beatrice Foods Co. v. F.T.C.*, 540 F.2d 303, 312 (7th Cir. 1976) ("The entering of a consent decree, however, *is not a decision on the merits* and therefore does not adjudicate the legality of any action by a party thereto.") (emphasis added).

*Id.* at 26–27.

Finally, even without reference to the decisions cited above, the "plain meaning" of the term "decision[ ]" may be determined by reference to any number of legal dictionaries. *See CBS Corp. v. Eaton Corp.*, No. 07 Civ. 11344, 2009 WL 4756436, at *4 (S.D.N.Y. Dec. 7, 2009) ("A sound method for determining the plain meaning of words is to look at their dictionary definitions." (quoting *In re Delta Airlines, Inc.*, 381 B.R. 57, 64–65 (S.D.N.Y. 2008))); *In re Delta Fin. Corp.*, No. 09-3557, 2010 WL 1784054, at *3 (3d Cir. May 5, 2010) (unpublished decision) (holding that in applying controlling New York law concerning the interpretation of insurance contracts, "the Bankruptcy Court's reliance on dictionary definitions to identify the plain meaning of the terms . . . was proper."). For example, Black's Law Dictionary (8th ed. 2004) defines decision as "[a] judicial . . . determination after consideration of the facts and the law." *See also* Ballentine's Law Dictionary (3d ed.) (defining decisions as "[t]he application, by a court of competent jurisdiction, of the law to a

state of facts proved, or admitted to be true, and a declaration of the consequences which follow." (citing *Le Blanc v. Ill. Cent. R. Co.*, 19 So.2d 212–13 (Miss. 1896))); Lawyers.com (*available at* http://research.lawyers.com/glossary/decision.html) (defining decision as "an authoritative determination (as a decree or judgment) *made after consideration of facts or law*" (emphasis added)). Under any of these definitions, the term "decision" requires more than what happened in this case.

*Id.* at 27–28.

*[P]arol evidence should have been examined to resolve the ambiguity and determine the intent of the parties. . . . See Whitebox Convertible Arbitrage Parnters, L.P. v. Fairfax Fin. Holdings, Ltd.*, 900 N.Y.S.2d 56, 59 (N.Y. App. Div. 1st Dept. 2010) ("Because the sentence is ambiguous, extrinsic evidence is admissible to resolve it."); *Scherer v. North Shore Car Wash Corp.*, 72 A.D.3d 927, 929, 901 N.Y.S.2d 281 (N.Y. App. Div. 2d Dept. 2010) ("[W]hen language of a stipulation is ambiguous, that is, 'reasonably susceptible of more than one interpretation,' extrinsic or parol evidence may be permitted to determine the parties' intent as to the meaning of that language."). The merger clause does not change this basic, well-established rule of law. *See Chocolas Assocs. Ltd. P'Ship v. Handelsman*, 691 N.Y.S.2d 519, 519 (N.Y. App. Div. 1st Dept. 1999) (affirming trial court's decision "that the terms of a settlement agreement . . . were sufficiently ambiguous [so as] to warrant the introduction of extrinsic evidence, despite the ex-

istence of a merger clause"); *World Mgmt. Corp. v. AT&T Info. Sys., Inc.*, 1525 N.Y.S.2d 433, 434–435 (N.Y. App. Div. 3d Dept. 1988) ("[N]either the contract's merger clause nor the parol evidence rule would prohibit collateral evidence . . . since such evidence would not modify or contradict the terms of the contract, but would explain ambiguities in the contract.").

*Id.* at 29–30 (italicized information not marked confidential, but provided for context).

*See Town of Wawarsing v. Camp, Dresser & McKee, Inc.*, 855 N.Y.S.2d 691, 693 (N.Y. App. Div. 3d Dept. 2008) (holding that to determine the intent of contracting parties, "[w]e are guided by basic principles of contract construction which instruct that the provisions of a contract should be construed as a whole with all parts given effect").

*Id.* at 32.