# In the United States Court of Federal Claims

Nos. 09-844C & 10-741C (consolidated)

(Filed: August 20, 2013)

*************************************

)
**SIKORSKY AIRCRAFT CORPORATION,**  )
)
       **Plaintiff,**  )
)
    **v.**  )
)
**UNITED STATES,**  )
)
      **Defendant.**  )
)

*************************************

Post-judgment motions to modify and effectively negate a protective order; timeliness; Federal Circuit Rule 11(d); confidential commercial information; RCFC 26(c)(1)(G); cost-of-production data; competitive harm

Jeffrey A. Hall, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, Illinois, for plaintiff. With him on the brief were Katherine M. Swift, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, Illinois, and Karen L. Manos, Gibson, Dunn & Crutcher LLP, Washington, D.C.

James W. Poirier, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

A final post-trial decision and a judgment were entered in these consolidated cases on March 22, 2013. *See Sikorsky Aircraft Corp. v. United States*, 110 Fed. Cl. 210 (2013); Judgment of March 22, 2013, ECF No. 321. Appeals from that judgment are now pending before the Court of Appeals for the Federal Circuit. *See appeals docketed*, Nos. 13-5096, 13-5099 (Fed. Cir. May 24, 2013, May 30, 2013). Given the appellate stage of these cases, this court has a very limited role jurisdictionally, having power to address only a restricted set of post-judgment matters. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (reiterating the principle that upon the filing of an appeal, the trial court surrenders "its control over those aspects of the case involved in the appeal."). One of those potentially residual issues has now been put before the

1

court, by way of a motion by the government to unseal virtually all of the sealed portions of the trial record. *See* Def.'s Mot. to Unseal the Trial Record, or, in the Alternative, to Redact Sealed Documents in the Trial Record ("Def.'s Mot. to Unseal"), ECF No. 329.[1] Sikorsky vigorously opposes this motion, arguing both that it is untimely and that it is without merit because the relevant portions of the trial record contain competitively sensitive information that is appropriately subject to a previously entered protective order.

Concurrently, the government has filed a second motion to seal one page of the trial transcript that has not been sealed. *See* Def.'s Sealed Mot. to Seal Page 172 of the Trial Tr. ("Def.'s Further Mot."), ECF No. 330. Sikorsky opposes this motion on the ground that the pertinent page contains no specific competitively sensitive information. Pl.'s Opp'n at 9.

The government's motions in effect seek to negate the protective order entered early in this litigation at the behest of the parties pursuant to Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC"), to protect confidential and proprietary information from public disclosure.[2] The motions also constitute a belated *volte-face* from an earlier, timely effort by both parties to calibrate and settle the protected portions of the record on appeal. *See* Joint Mot. to Unseal Portions of the Trial Tr. (June 26, 2013), ECF No. 327. That joint motion had been filed with the court pursuant to Federal Circuit Rule 11(d),[3] and it was promptly granted. *See* Order of June 26, 2013, ECF No. 328.

---

[1]The government concedes that one exhibit could not be unsealed because it contains export-controlled technical data on the UH-60L BLACKHAWK helicopter, and disclosure of export-controlled information is not permitted by federal law. *See* Def.'s Mot. to Unseal at 1; Pl.'s Opp'n to Def.'s Mots. to Unseal the Trial Record and to Seal One Page of the Trial Tr. ("Pl.'s Opp'n"), at 2, ECF No. 331.

[2]RCFC 26(c)(1)(G) is identical to Fed. R. Civ. P. 26(c)(1)(G), and provides that for good cause, a protective order may be entered "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." RCFC 26(c)(1)(G).

[3]Federal Circuit Rule 11 is entitled "Forwarding the Record." Subdivision (d) provides:

> (d) *Agreement by Parties to Modify a Protective Order; Certificate of Compliance.* If any portion of the record in the trial court is subject to a protective order and a notice of appeal has been filed, each party must promptly review the record to determine whether protected portions need to remain protected on appeal. If a party determines that some portions no longer need to be protected, that party must seek an agreement with the other party. Any agreement that is reached must be promptly presented to the trial court, which may issue an appropriate order. Whether or not an agreement is reached, each party must file a certificate of compliance within 45 days of docketing stating it complied with this rule. This Federal

2

## BACKGROUND

On the merits, these cases concern the application of the government's Cost Accounting Standards ("CAS") set out at 48 C.F.R. Chapter 99, Subchapter B, Part 9904. Sikorsky has and has had a number of contracts with the government to manufacture and supply aircraft and spare parts to the government, primarily for military use. The government challenged Sikorsky's allocation of indirect costs to its government contracts and sought reimbursement of approximately $80 million plus interest. *See Sikorsky*, 110 Fed. Cl. at 213. After trial, the court ruled that the government had failed to carry its burden of proof to demonstrate that Sikorsky had improperly allocated indirect costs under the CAS, and Sikorsky accordingly defeated the government's claim. *Id.* at 230. The proofs at trial included extensive evidence of various categories of Sikorsky's costs, and portions of the trial record were sealed to maintain confidentiality of cost data. Correspondingly, the court's final decision reflected redactions of data and information about specific costs. Portions of the trial record were sealed and redactions were made in the court's final decision in accord with the narrowly drawn protective order entered in the cases.

## STANDARD FOR DECISION

The court's protective order is a non-final order, reconsideration of which is governed by RCFC 54(b) and 59(a). RCFC 54(b) specifies that a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Even though these cases have been finally adjudicated, the protective order has a continuing effect and constrains the parties' public disclosure of certain factual aspects of the litigation. The protective order consequently is subject to reconsideration on grounds applicable to interlocutory orders. *Cf. L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48 (2011) (addressing a motion for reconsideration of a prior order for supplementation of an administrative record in a bid protest). Substantively, RCFC 59(a)(1) provides that a court may grant a motion for reconsideration for, among other things, "any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." RCFC 59(a)(1)(B). In general, "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

## ANALYSIS

### A. *Timeliness*

The government brings its motions pursuant to Federal Circuit Rule 11(d). *See* Def.'s Mot. to Unseal at 1; Def.'s Further Mot. at 1. Sikorsky objects that the government's motion to unseal the trial record is untimely under that Rule. Pl.'s Opp'n at 3. Federal Circuit Rule 11(d) requires parties to seek unsealing of any non-confidential material in the trial record and to

---

Circuit Rule 11(d) does not apply in a case arising under 19 U.S.C. § 1516a.

Federal Circuit Rule 11(d).

certify compliance with the Rule "within 45 days of docketing" of the appeal. The government's appeal was docketed on May 24, 2013, and the parties consequently were obliged to complete their responsibilities under Federal Circuit Rule 11(d) and certify compliance by July 2, 2013. The parties undertook to adhere to this schedule by conferring and then filing their Joint Motion to Unseal Portions of the Trial Transcript on June 26, 2013, which motion was granted by this court on the same day. Then, 27 days later, the government sought to obviate that effort by filing the pending motions.

A protective order ordinarily is subject to modification at any time it remains in effect.[4] As a case progresses, even on appeal, circumstances may change such that a previously entered protective order is no longer fully appropriate and modification is warranted. In this instance, however, no showing of such changed circumstances has been made, or even attempted. Nothing has happened to affect Sikorsky's posture regarding its cost data since the parties completed their obligations under Federal Circuit Rule 11(d) and filed their Joint Motion to Unseal Portions of the Trial Transcript. The time has run under Federal Circuit Rule 11(d) for action to settle the appellate record, and the government has made no showing of any need to reopen the matter.

B. *"Trade Secret or Other Confidential Research, Development, or Commercial Information" Under RCFC 26(c)(1)(G)*

To support and justify the protective order, the government contends that Sikorsky "must demonstrate a trade secret qualifying for the limited protection available under RCFC 26(c)(1)(G)." Def.'s Mot. to Unseal at 2 (citing *In re: Violation of Rule 28(d)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011)). The protection available under the rule is not so narrow, however. Instead, the court must also consider "confidential . . . commercial information," and in that context, the court evaluates the competitive harm that may accrue through disclosure. *See*, *e.g.*, *Violation of Rule 28(d)*, 635 F.3d at 1357; *Miles v. Boeing Co.*, 154 F.R.D. 112, 114-15 (E.D. Pa. 1994) (issuing a protective order to shield labor costs from disclosure because "[s]uch information reflects upon Boeing's price competitiveness in its market. If the information sought was made available to the general public, it would directly reflect Boeing's labor costs allowing competitors to examine Boeing's production abilities."). That balancing process is an everyday, quotidian task for this court, particularly in acting on requests for protective orders in bid protests where competitive considerations are directly at issue.

In this instance, *all* of Sikorsky's cost information over recent years was pertinent to the issues raised by the government's claim under the Cost Accounting Standards. Because allocation of indirect costs was the focus of the government's claim, the evidence at trial covered

---

[4]*See*, *e.g.*, Federal Circuit Rule 11(e):

> (e) *Motion to Modify the Protective Order.* A party may move at any time in this court to modify a protective order to remove protection from some material or to include another person within its terms. This court may decide the motion or may remand the case to the trial court. This court, sua sponte, may direct the parties to show cause why a protective order should not be modified.

direct materiel and labor costs as well as indirect costs for military and commercial applications. *See Sikorsky*, 110 Fed. Cl. at 223-30. In addition, in its manufacturing operations during the relevant time, Sikorsky had "shift[ed] from making most parts in-house to buying a portion of finished components from suppliers." *Id*. at 227. The cost data were accordingly very revealing about the consequent increase in Sikorsky's direct materiel costs and the accompanying decrease or relative stability in its labor costs and indirect costs. *Id*.[5]

Despite this explicit and extensive record, with the attendant strong showing of the competitive sensitivity of the cost data, the government asserts that Sikorsky provided only a "conclusory allegation" that the cost data were confidential under a competitiveness standard. Def.'s Mot. to Unseal at 3. The assertion has no basis. The protective order entered in this case was narrowly drawn to shield from disclosure cost-of-production data that would cause substantial competitive harm if made publicly available. Numerous other decisions have reached the same result in comparable circumstances. *See United Techs. Corp. v. United States Dep't of Defense*, 601 F.3d 557, 564 (D.C. Cir. 2010) (holding that release of "proprietary information regarding Sikorsky's manufacturing process and procedures" would "substantially harm Sikorsky's competitive position because its competitors would use this information to their advantage in . . . adjusting their manufacturing techniques"); *McDonnell Douglas Corp. v. United States Dep't of the Air Force*, 375 F.3d 1182, 1190-92 (D.C. Cir. 2004) (holding that disclosure of a defense contractor's costs could likely cause competitive harm and thus that those costs were exempt from disclosure under the Freedom of Information Act); *Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 237 (2013) (holding that "competitive information" including "manufacturing costs" was protected from disclosure under the Federal Technology Transfer Act); *General Elec. Co. v. Department of the Air Force*, 648 F. Supp. 2d 95, 102-04 (D.D.C. 2009) (holding that protection of unit prices in engine parts contracts was proper due to likely competitive harm).

In sum, the government's motions have no merit.

## CONCLUSION

The government's Motion to Unseal the Trial Record, or, in the Alternative, to Redact Sealed Documents in the Trial Record is DENIED, as is the government's Sealed Motion to Seal Page 172 of the Trial Transcript.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[5]The one page of the trial transcript that the government does want to seal is a page reporting testimony of a Sikorsky official that in general terms compares Sikorsky's cost structure in years back to 1999. *See* Def.'s Further Mot. at 2. That page was not sealed under the protective order because it did not contain any specific cost-of-production information. The particular testimony does, however, show the competitive sensitivity of the cost information dating back to 1999.