**Slip Op. 24-138**

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>
CALIFORNIA STEEL INDUSTRIES,<br>
INC.,<br>
    *Plaintiff*,<br><br>
v.<br><br>
UNITED STATES,<br>
    *Defendant*.
</td><td>
Ct. No. 21-00015-MMB
</td></tr>
</table>

### ORDER

[The court unseals Slip Opinion 24-127 without redactions.]

Dated: December 13, 2024

*Baker*, Judge: In this Administrative Procedure Act case brought under the court's residual jurisdiction, *see* 28 U.S.C. § 1581(i), Plaintiff California Steel, Inc. (CSI), challenges the Commerce Department's denials of its requests for exclusions from Section 232 national security tariffs on imported steel slab. The agency based those denials on objections proffered by U.S. Steel Corporation, including material that the latter denominated as confidential.[1]

After merits briefing, the court issued Slip Opinion 24-127 (ECF 145) under provisional seal.[2] Concurrently, it informed the parties and *amicus*

---

[1] Exclusion requestors and objectors may both submit "confidential or proprietary business information" to the agency. 15 C.F.R. Pt. 705 Supp. 1(b)(5)(iii) (2020). Such filings are not "subject to public review." *Id*. Supp. 1(b)(5)(i).

[2] The court sustained most of Commerce's denials and remanded the balance.

*curiae* U.S. Steel[3] that absent any protest, it would unseal its unredacted decision. *See* ECF 147. In so doing, it flagged the opinion's citations to the confidential record. *See id.* at 1–2. It also reminded the parties and U.S. Steel that any proponent of redaction confronts a heavy burden. *See id.* at 2 n.1. "The public's right of access to judicial records is a fundamental element of the rule of law." *Id.* (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021)). "[C]ourts are duty-bound to protect public access to judicial proceedings and records." *Id.* (quoting *Binh Hoa Le*, 990 F.3d at 417).

U.S. Steel timely opposed unsealing the opinion and sought redactions. *See* ECF 148. The government agreed with the company. *See* ECF 150. CSI took no position.

For the reasons explained below, the court holds that U.S. Steel has not carried its burden. Because "[t]ransparency is a touchstone of our judicial system," *CVB, Inc. v. United States*, 681 F. Supp. 3d 1313, 1323 (CIT 2024), *appeal pending sub nom. In re United States*, No. 2024-1566 (Fed. Cir.), the court directs the clerk to unseal Slip Opinion 24-127 without redactions.[4]

---

[3] The court denied the company's attempt to intervene, *see N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313 (CIT 2021), *aff'd sub nom. Cal. Steel Indus., Inc. v. United States*, 48 F.4th 1336 (Fed. Cir. 2022), but later granted its request to file an *amicus* brief, *see* ECF 116.

[4] In so doing, the court observes that the statutory cause of action asserted by CSI—the APA—does not address the court's public access obligations. *Cf.* 19 U.S.C. § 1516a(b)(2)(B) (providing that the court "shall . . . preserve[] . . . in any action *under*

I

"There is a strong presumption in favor of a common law right of public access to court proceedings." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978)). It "is especially strong" as to "[a] court's decrees, its judgments, [and] its orders," which "are the quintessential business of the public's institutions." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

This presumption "serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 314–15 (D.C. Cir. 1980)). Most importantly, it undergirds the American experiment in self-government. As James Madison observed, "[A] people who mean to be their own Governors, must arm themselves with the power which knowledge gives." 9 The Writings of James Madison 103 (Gaillard Hunt ed. 1910); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("[P]rofessional and public monitoring is an essential feature of democratic control" of the federal

---

*this section*," i.e., antidumping and countervailing duty cases, the "confidential or privileged status accorded to any documents, comments, or information," except that it "may disclose such material under such terms and conditions as it may order") (emphasis added). The court expresses no view about the extent, if any, to which § 1516a(b)(2)(B) limits the right of public access to judicial records in such cases.

judiciary, and "[s]uch monitoring is not possible without access to testimony and documents . . . used in the performance of Article III functions.").

The presumption of public access, however, "is not absolute." *In re Violation*, 635 F.3d at 1356 (quoting *Nixon*, 435 U.S. at 598). It is rebuttable in various circumstances, including when such access "'might . . . become a vehicle for improper purposes,' for example, 'as sources of business information that might harm a litigant's competitive standing.'" *Id.* (quoting *Nixon*, 435 U.S. at 598). In considering whether to limit "the public's access to [judicial] documents, the court must 'weigh the interests advanced by the parties in light of the public interest and duty of the courts.'" *Id.* at 1356–57 (alteration omitted) (quoting *Nixon*, 435 U.S. at 602).

Under this balancing test, "the ordinary showing of good cause which is adequate to protect discovery materials from disclosure cannot alone justify protecting such material after it has been introduced at trial," *id.* at 1358 (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993))—and, by extension, submitted in connection with dispositive motions. Instead, "'only the *most compelling* showing can justify' limitations on the disclosure of 'testimony or documents actually introduced at trial.'" *Id.* (emphasis added) (quoting *Poliquin*, 989 F.2d at 533). This principle necessarily applies to material placed in "the joint appendix," where a "court will look to find the admini-

strative record" in cases involving "judicial review of agency action," *Metlife*, 865 F.3d at 667—at least where, as here, the court's decision cites it.

In considering whether a proponent of redaction has made the necessary showing, it is of no moment that "the parties agree to maintain confidentiality" of such information. *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1370 (Fed. Cir. 2021). That's because the federal judiciary has "an independent duty to protect the public's right of access." *Id.* This duty is surely at its zenith when it comes to this court's opinions, as "[a]ll decisions of the Court of International Trade shall be preserved and open to inspection." 28 U.S.C. § 257; *cf. In re Application of Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) ("[S]ince at least the time of Edward III" in the 14th century, "judicial decisions have been held open for public inspection.") (citing 3 Edward Coke, *Reports*, at iii–iv (London, E. & R. Nutt & R. Gosling 1738) (1602)).[5]

II

Slip Opinion 24-127 addresses Commerce's denials of CSI's exclusion requests in 2018 and 2020. U.S. Steel objects to unsealing the opinion's quotations of confidential submissions it made opposing both sets of requests.

---

[5] For an in-depth examination of the venerable history of the right of public access to judicial records, *see* Steven Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177, 181–202 (2009).

As to CSI's 2018 requests, U.S. Steel *publicly* represented to the Department that it could supply slab within eight weeks. *See* Appx06778. The agency relied on that representation. *See* Slip Op. at 11 (citing Appx01410). But in a confidential filing with Commerce that the opinion repeatedly quotes, *see id.* at 9, 30 & n.22, the latter company said something different—that it could not provide slab beyond the companies' contract amount until a date in 2018 that was *more than* eight weeks after the former sought its exclusions.

U.S. Steel contends that the latter submission is "sensitive" because it relates to "the company's capacity to provide specific slab products on very short notice." ECF 148, at 6. And even though the material is "now several years old," disclosing "such information about [its] available capacity to supply a particular product in a specific quantity and time frame undermines [the company's] negotiating position." *Id.* at 6–7. The supporting declaration of Robert Kopf, vice president for sales, asserts that the relatively small market of domestic purchasers of slab can be "manipulat[ed]" through "public release of confidential information related [to] . . . delivery, availability, [or] timing." ECF 148-1, at 2.

The company has not carried its burden. As it acknowledges, the detail in question—when it could supply CSI with slab volume greater than that specified in the companies' 2018 contract—is more than six years old. "[I]nformation may lose its confidential nature once it becomes stale." *AmerGen*

*Energy Co. by & through Exelon Generation Co. v. United States*, 115 Fed. Cl. 132, 141 (2014) (collecting cases). "[V]ague and speculative allegations of injury from the disclosure of years-old information are not sufficient to overcome the strong presumption favoring public access." *Id.* The company hasn't explained with particularity how disclosure of this old data can impair its current competitive position.

Moreover, even if the information weren't stale, the court concludes that U.S. Steel's *public* representation that it could supply slab within eight weeks waived any confidentiality claim about its concession undermining that same assertion. In effect, it was a subject-matter waiver. *Cf. Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (in the context of the attorney-client privilege, "a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not").

The company also seeks to claim confidentiality as to its statement that CSI "indicated that [it was] not comfortable with a higher volume" in the companies' supply contract. Slip Op. at 9, 30 n.22 (quoting Appx06787); ECF 148, at 5 (asking court to redact "the direct quote"). In substance, however, the former publicly disclosed the same information in its surrebuttal: "[T]he stated monthly volume range of [9,000–14,000 metric tons] was defined by CSI as *the amount they were willing to commit to buy*." Slip Op. at 9 (quoting Appx06782)

7

(emphasis in surrebuttal original). That disclosure waived any confidentiality claim. *See Jiangsu Alcha Aluminum Co. v. United States*, 712 F. Supp. 3d 1376, 1381 n.3 (CIT 2024) (noting that parties can "waive[] any confidentiality claim by referring to [assertedly business proprietary information] in their public briefs and in open court") (citing Fed. Cir. R. 25.1(c)).

As for the 2020 exclusion requests, U.S. Steel asks (*see* ECF 148, at 8) that the court "publicly summarize rather than quote the timing and contents" of an email from CSI that the former company proffered to Commerce. *See* Slip Op. at 14 (quoting Appx22958). According to Mr. Kopf, to publicly release "statements made while negotiating a sale" would undermine the company's "ability to negotiate with *all* buyers of a product." ECF 148-1, at 1 (emphasis in original). Such disclosure, he contends, might cause other customers to "try to leverage this information in their own negotiations with U.S. Steel." *Id*. The company, however, disclosed the substance of that email on the public record when it told Commerce that CSI "delayed October 2019 spot sale negotiations . . . ." Appx22915; *see also* Appx22951 (stating on surrebuttal that "since October 2019, [CSI] has repeatedly declined the full spot sale volume offered by U.S. Steel"). Any damage to its negotiating position with other customers—if any—has already occurred.

Finally, U.S. Steel seeks redaction of the exact tonnage that it supplied to CSI in the first half of 2020. *See* ECF 148, at 9–10; Slip Op. at 32. It asserts

8

that revealing the "precise volume of supplied product to a customer in such a recent, narrow timeframe could impact current and future business dealings with [its] other customers." ECF 148, at 9–10. But it doesn't explain how or why that's so, and Mr. Kopf's declaration is even less helpful. In any event, subject-matter waiver applies here as well. U.S. Steel stated on the public record the precise tonnage it sold to CSI in 2018 and 2019. *See* Appx22949. The former can hardly claim now that disclosure of the same information for the first half of 2020 will harm its competitive position.

\* \* \*

The court holds that U.S. Steel has not made the "most compelling showing" that is necessary to justify restricting full public access to Slip Opinion 24-127. *In re Violation*, 635 F.3d at 1358 (quoting *Poliquin*, 989 F.2d at 533). The clerk shall immediately unseal the decision without any redactions.

Dated:     December 13, 2024          /s/ *M. Miller Baker*
           New York, New York         M. Miller Baker, Judge

9